**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LYDIA GARCIA, Individually and on behalf of all others similarly situated, | Case No. 04-cv-08807 (KMK) |
| Plaintiff, | |
| vs. | <u>CLASS ACTION</u> |
| JAKKS PACIFIC, INC., JACK FRIEDMAN, STEPHEN BERMAN, and JOEL BENNETT, | |
| Defendants. | |
| QUANTUM EQUITIES, L.L.C., Individually and on behalf of all others similarly situated, | Case No. 04-cv-08877 (KMK) |
| Plaintiff, | |
| vs. | CLASS ACTION |
| JAKKS PACIFIC, INC., JACK FRIEDMAN, STEPHEN BERMAN, and JOEL BENNETT, | |
| Defendants. | |

**(Additional Captions Set Forth Below)**

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE TUCKER GROUP FOR CONSOLIDATION, APPOINTMENT <u>AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

| | |
|---|---|
| JAMES T. KAHN, On behalf of himself and all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>JAKKS PACIFIC, INC., JACK FRIEDMAN, STEPHEN BERMAN, and JOEL BENNETT,<br><br>　　　　　　　Defendants. | Case No. 04-cv-08910 (KMK)<br><br><u>CLASS ACTION</u> |
| JONCO INVESTORS, LLC, Individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>JAKKS PACIFIC, INC., JACK FRIEDMAN, STEPHEN BERMAN, and JOEL BENNETT,<br><br>　　　　　　　Defendants. | Case No. 04-cv-09021 (KMK)<br><br>CLASS ACTION |
| JAMES IRVINE, Individually and on behalf of all others similarly situated,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>JAKKS PACIFIC, INC., JACK FRIEDMAN, STEPHEN BERMAN, and JOEL BENNETT,<br><br>　　　　　　　Defendants. | Case No. 04-cv-09078 (KMK)<br><br>CLASS ACTION |

## **INTRODUCTION**

Class members Kenneth J. Tucker, Scott L. Pearlstone, Trudy Fanning, Tonia R. Tucker-Kraus and Michael Kraus (the "Tucker Group" or "Movants") hereby move this Court for entry of an order consolidating the above-captioned actions, appointing Movants as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and approving Movants' selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") to serve as Lead Counsel pursuant to the PSLRA.

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate the above-captioned actions (the "Actions"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). As soon as practicable after a decision on consolidation has been rendered, the court is to appoint as the lead plaintiff the movant or group of movants with the largest financial interest of those seeking such appointment in the litigation and which otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See id.*

In Point I, Movants submit that the above-captioned actions should be consolidated because they each involve substantially similar issues of law and fact. *See* Fed. R. Civ. P. 42(a). In Point II, Movants argue that they should be appointed Lead Plaintiff and that their selection of Lead Counsel should be approved because Movants: (1) timely filed for a motion for appointment of Lead Plaintiff; (2) suffered losses of $44,996 in connection with transactions in JAKKS Pacific, Inc. ("JAKKS") securities, and thus have the largest financial interest in this litigation of any plaintiff or lead plaintiff movant of which Movants are aware; and (3) will adequately represent the interests of the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). In Point III, Movants argue that its selection of Milberg Weiss as Lead Counsel should be approved by the Court because, pursuant to the PSLRA, the presumptive Lead Plaintiff selects lead counsel.

Milberg Weiss has extensive experience in the prosecution of securities class actions and will more than adequately represent the interests of all class members.

## FACTUAL BACKGROUND[1]

JAKKS designs, develops, produces and markets toys and related products using well-recognized trademarks and brand names it licenses. Prior to the Class Period, JAKKS licensed the rights from World Wrestling Entertainment ("WWE"), an integrated media and entertainment company, to manufacture toys bearing the WWE brand name in the United States.

In pursuit of more lucrative agreements with WWE, JAKKS bribed a senior WWE executive, James Bell ("Bell"), who was responsible for negotiating and managing license agreements, and WWE's licensing agent, Stanley Shenker & Associates, Inc. ("SSAI"), among others. In exchange for the bribes from JAKKS, laundered through foreign corporations, Bell and SSAI agreed to assist JAKKS in securing a WWE videogame license and favorable amendments to the toy license. JAKKS's bribery scheme was successful, and on or about February 10, 1997, WWE, at the recommendation of SSAI and Bell, entered into an international toy license agreement with JAKKS. In June 1998, SSAI and Bell convinced WWE management to enter into a videogame license agreement with THQ & JAKKS Pacific LLC, a joint venture formed by JAKKS and video game maker THQ Inc. The videogame license was set to expire on December 31, 2009, subject to the right to renew for an additional five years. At the

---

[1] The factual allegations set forth herein are taken from the complaint *Jonco Investors, LLC v. JAKKS Pacific, Inc.*, et al., No. 04-CV-9021 (S.D.N.Y. filed Nov. 16, 2004) (KMK) (the "Jonco Investors Action"). *See* Exhibit E (attaching complaint). All exhibits are attached to the Declaration of Andrei V. Rado, submitted herewith.

2

recommendation of SSAI and Bell, WWE extended the term of the domestic and international toy license agreements with JAKKS to make them conterminous with the videogame license. The WWE videogame license and toy licenses were extremely lucrative for JAKKS. Throughout the Class Period, JAKKS publicly reported quarter after quarter of positive results which it attributed, in material part, to its WWE product line. At all relevant times, however, defendants failed to disclose that in order to get the licenses, they had bribed SSAI and Bell, among others.

The truth began to emerge on October 19, 2004. On that day, before the market opened, JAKKS issued a press release announcing its third-quarter 2004 results and that the Company was "engaged in discussions with WWE" over the validity of its toy and video games license, stating that the discussions are an outgrowth of certain litigation that has been pending between WWE and WWE's former licensing consultant and a former WWE employee. In the press release, JAKKS stated that if the discussions with WWE are not satisfactorily concluded, the litigation is likely to be commenced by WWE. In reaction to this news, the price of JAKKS common stock declined precipitously, falling $5.34 per share, or 22%, from its previous day's closing price of $24.15, to close at $18.81. On the same day, October 19, 2004, after the market closed, *Reuters* published an article reporting that WWE filed a complaint against JAKKS and the Individual Defendants, among others, alleging that they had perpetrated a massive bribery scheme involving lucrative licensing deals, in violation of the Racketeer Influenced and Corrupt Organization Act and anti-bribery laws. On the following trading day, October 20, 2004, the price of JAKKS stock plummeted again in reaction to this news, falling $5.85 per share, or 31% from its closing price on October 19, 2004, to close at $12.96. Defendants

were motivated to engage in this illegal and fraudulent bribery scheme in order for Company insiders, including defendants, to sell hundreds of thousands of shares of their personally-held JAKKS securities at artificially inflated prices and to reap over $37.6 million in proceeds. During the Class Period, defendant Jack Friedman himself sold 960,635 shares of JAKKS stock for proceeds of over $19.3 million.

## POINT I

## THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Pursuant to the PSLRA, prior to selecting a lead plaintiff, the Court must decide whether to consolidate the above-captioned actions. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42 (a). *See generally Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990). Pending before this Court are five related actions, each of which assert class claims on behalf of those who purchased or otherwise acquired JAKKS securities at prices artificially inflated by defendants' materially false and misleading statements, in violation of the Exchange Act. The Actions each name the Company and certain of its officers and/or directors as defendants, assert largely overlapping class periods and involve virtually identical factual and legal issues.[2] Consolidation of the

---

[2] Some of the actions, including the Jonco Investors Action, asset a class period of December 3, 1999 to October 19, 2004, while others assert a slightly longer class period of October 26, 1999 to October 19, 2004. The slight differences among class periods do not pose an obstacle to consolidation. *See e.g., Malasky v. IAC/InteractiveCorp,* No. 04 Civ. 7447, 2004 U.S. Dist. LEXIS 25832 at * 6 (S.D.N.Y. Dec. 20, 2004) (Holwell, J.) ("Although some of the complaints identify the class period as commencing on July 19, 2001 while the others identify the commencement date as March 19, 2003, all of the complaints rest on the same fundamental allegations that defendants released fraudulent press releases. . ."); *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 537 (N.D. Ohio 2001) (consolidating actions alleging varying class periods); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129 (C.D. Cal. 1999) (same); *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug.

4

Actions will also result in substantial efficiencies. Thus, consolidation is appropriate pursuant to Fed. R. Civ. P. 42(a).

## POINT II

## MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF

Movants should be appointed Lead Plaintiff because they have complied with all of the PSLRA's requirements, have demonstrated the largest financial interest in this litigation and otherwise meet the relevant requirements of Fed. R. Civ. P. 23. As the presumptive Lead Plaintiff, Movants' selection of the law firm of Milberg Weiss to serve as Lead Counsel, pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), should be approved by the Court.

**A.    The Procedure Required By the PSLRA**

The PSLRA establishes a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed, above-captioned action caused notice to be published on *Business Wire*, a business-oriented and well known national newswire service, on November 5, 2004. *See* Declaration of Andrei V. Rado at Exhibit B.

Second, within 60 days of publishing the notice, any person or group of persons who are members of the proposed class may apply to the court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B).

---

6, 1997) (same). These, and any other differences, will be mooted by the filing of an amended complaint by the Lead Plaintiff.

Finally, the PSLRA provides that within 90 days after publication of the notice the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that:
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii). *See generally Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co., Inc.*, No. 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571, at *17-23 (S.D.N.Y. May 27, 2004) (Sweet, J.).

### B. Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA

#### 1. Movants Have Complied With the PSLRA and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff in this case, under 15 U.S.C. § 78u-4(a)(3)(A) and (B), expires on January 4, 2005 (60 days after publication of the November 5, 2004, notice announcing the filing of the first action). Movants' application, filed January 4, 2005, is thus timely. Movants have reviewed the complaint and are willing to serve as representative parties on behalf of the Class. *See* Exhibit B (certifications of Movants). In addition, Movants have selected and retained competent counsel to represent them and the Class. *See* Exhibit D. Accordingly, Movants have satisfied the individual requirements

6

of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff, and its selection of Milberg Weiss as Lead Counsel approved by the Court.

### 2. Movants Have The Requisite Financial Interest In The Relief Sought By The Class

During the Class Period, as evidenced by, among other things, the accompanying signed certifications and chart showing Movants' Class Period transactions, *see* Exhibits B-C , Movants purchased 16,491 shares of JAKKS at prices that were artificially inflated by defendants' materially false and misleading statements. In addition, Movants incurred a substantial loss of approximately $44,996 on their transactions in JAKKS shares. *See* Exhibit C.3 Movants have a large financial interest in this case, which, to the best of their knowledge, constitutes the largest financial interest in the litigation. Therefore, Movants satisfy the financial interest requirement pursuant to 15 U.S.C. § 78u-4 (a)(3)(B).

### 3. Movants Otherwise Satisfies Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

---

3 For purposes of this analysis, the longest class period, October 26, 1999 to October 19, 2004, was utilized, consistent with the usual practice. *See, e.g., In re Party City Sec. Litig*., 189 F.R.D. 91, 94 n.3 (D.N.J. 1999) ("The Catanzarite Action is relied upon for the purposes of this [lead plaintiff] motion because the class period alleged therein covers the longest class period alleged in the actions filed against the Defendants.) (emphasis added).

Of the four prerequisites to class certification, only two, typicality and adequacy, directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Pirelli Armstrong Tire Corp,* 2004 U.S. Dist. LEXIS 9571, at *53. Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986); *Pirelli Armstrong Tire Corp,* 2004 U.S. Dist. LEXIS 9571, at *54; *Babcock v. Computer Assocs. Int'l*, 212 F.R.D. 126, 130 (E.D.N.Y. 2003). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Pirelli Armstrong Tire Corp,* 2004 U.S. Dist. LEXIS 9571, at *54.

8

Movants satisfy this requirement because, just like all other class members, they: (1) purchased or otherwise acquired JAKKS shares during the Class Period; and (2) suffered damages thereby. Thus, Movants' claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Movants to represent the class to the existence of any conflicts between the interest of Movants and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the proposed lead plaintiff and the class members; and (2) the class representatives' choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. *Babcock*, 212 F.R.D. at 131 (citation omitted).

Movants are adequate representatives of the class. As evidenced by the injury suffered by Movants, which acquired 16,491 JAKKS shares during the Class Period, the interests of Movants are clearly aligned with the interests of the members of the Class, and there is no evidence of any antagonism between the Movants' interests and those of the other members of the class. Further, Movants have taken significant steps which demonstrate they will protect the interests of the class: they have retained competent and experienced counsel to prosecute these claims and to further investigate the facts giving rise to this action. In addition, as shown below, Movants' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

9

## POINT III

### MOVANTS' CHOICE OF LEAD COUNSEL SHOULD BE APPROVED

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), Movants have selected Milberg Weiss to serve as lead counsel, subject to Court approval. Milberg Weiss possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities class actions on behalf of injured investors. Milberg Weiss currently serves as Lead Counsel or as chair of Plaintiffs' Executive Committees in many high-profile security actions pending throughout the country. As is evidenced by its firm resume, Milberg Weiss has been appointed as lead or co-lead counsel in landmark class actions, including *In re Initial Public Offering Sec. Litig.*, No. 21 mc 92 (S.D.N.Y. filed Aug. 9, 2001), and in *In re Mutual Funds Investment Litig.*, MDL No. 1586. *See* Exhibit D (attaching Milberg Weiss firm resume).

### CONCLUSION

For the foregoing reasons, Movants satisfy the requirements of the PSLRA for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). Movants respectfully request that this Court: (1) consolidate the

Actions; (1) appoint the Tucker Group as Lead Plaintiff pursuant to § 21D (a)(3)(B) and (2) approve its selection of Milberg Weiss as Lead Counsel.

DATED: January 4, 2005

Respectfully submitted,

**MILBERG WEISS BERSHAD & SCHULMAN LLP**

By: _____/s/_____
Steven G. Schulman  (SS-2561)
Peter E. Seidman (PS-8769)
Andrei V. Rado (AR-3724)
One Pennsylvania Plaza - 49th Floor
New York, NY  10119
Telephone: (212) 594-5300
Facsimile:  (212) 868-1229

**Proposed Lead Counsel**

**THE BRUALDI LAW FIRM**
Richard B. Brualdi
29 Broadway, Suite 2400
New York, NY  10006
Tel:  (212) 952-0602
Fax:  (212) 952-0608

**Plaintiff's Counsel**

11

**TABLE OF CONTENTS**

**Page No.**

INTRODUCTION ................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................ 2

POINT I
    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES ........................... 4

POINT II
    MOVANTS SHOULD BE APPOINTED LEAD PLAINTIFF ............................................. 5

    A.    The Procedure Required By the PSLRA .............................................................. 5

    B.    Movants Satisfy The Lead Plaintiff Requirements Of The PSLRA ....................... 6

        1.    Movants Have Complied With the PSLRA and Should Be
Appointed Lead Plaintiff .............................................................................. 6

        2.    Movants Have The Requisite Financial Interest In The
Relief Sought By The Class ......................................................................... 7

        3.    Movants Otherwise Satisfies Rule 23 .......................................................... 7

POINT III
    MOVANTS' CHOICE OF LEAD COUNSEL SHOULD BE APPROVED ........................ 10

CONCLUSION ..................................................................................................................... 10