UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE JAKKS PACIFIC, INC. SHAREHOLDERS CLASS ACTION LITIGATION | : Case No. 04-CV-8807 (KMK) : : : : |

MEMORANDUM IN SUPPORT OF THE MOTION OF INDIANA
ELECTRICAL WORKERS FOR APPOINTMENT AS LEAD PLAINTIFF
AND FOR APPROVAL OF SELECTION OF LEAD COUNSEL

I.      **PRELIMINARY STATEMENT**

Presently pending before this Court is a consolidated action (the "Action")[1] brought on behalf of all those who purchased or otherwise acquired JAKKS Pacific, Inc. ("JAKKS" or the "Company") shares between October 26, 1999 and October 19, 2004, inclusive (the "Class Period") and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. §78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

Institutional Investor Indiana Electrical Workers Pension Trust Fund IBEW ("Indiana Electrical Workers") hereby moves this Court for an order to: (i) appoint Indiana Electrical Workers as Lead Plaintiff in the Action under Section 21D(a)(3)(B) of the Exchange Act; and (ii) approve Indiana Electrical Workers' selection of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") to serve as Lead Counsel.

This motion is made on the grounds that Indiana Electrical Workers is the most adequate plaintiff, as defined by the PSLRA. Indiana Electrical Workers is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.*, 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) (holding that the institutional investors proposed as lead plaintiffs are exactly the type of lead plaintiff that Congress wanted to encourage to participate in the litigation of these actions and exercise control over the selection and actions of plaintiffs counsel). Moreover, as an institutional investor, Indiana Electrical Workers is accustomed to acting as a fiduciary and its experience in legal and financial matters will substantially benefit the class.

---

[1] By Order dated January 25, 2005, the related actions were all consolidated.

Indiana Electrical Workers suffered losses of $5,164.00 in connection with its purchases of thousands of JAKKS shares during the Class Period.[2]  See Alba Decl. Ex. B.[3]  In addition, Indiana Electrical Workers, for the purposes of this motion, adequately satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that its claims are typical of the claims of the putative class and that it will fairly and adequately represent the interests of the class.

## II.    FACTUAL BACKGROUND [4]

JAKKS describes itself as a multi-line, multi-brand toy company that designs, develops, produces and markets toys and related products.

The complaint charges JAKKS and certain of its officers and directors with violations of the Securities Exchange Act of 1934. The complaint alleges that, throughout the Class Period, defendants issued numerous positive statements concerning the increasing sales of JAKKS' products licensed through the World Wrestling Entertainment Inc. ("WWE").  As alleged in the complaint, these statements were materially false and misleading because defendants knew, but failed to disclose: (a) that the WWE was contending that the WWE licenses had been obtained through a pattern of commercial bribery; (b) that the Company's relationship with the WWE was being negatively impacted by the WWE's contention that the licenses it had granted to the Company were

---

[2]    The losses suffered by Indiana Electrical Workers are not the same as its legally compensable damages, measurement of which is often a complex legal question which cannot be determined at this stage of the litigation.  The approximate losses can, however, be determined from the certifications required under Section 21D of the Exchange Act and based upon reference to information concerning the current market for the Company's securities.  Indiana Electrical Workers' transactions in JAKKS shares are set forth in the accompanying loss chart.

[3]    References to the "Alba Decl., Ex. ___" are to the exhibits attached to the accompanying Declaration of Mario Alba Jr. dated February 1, 2005, and submitted herewith.

[4]    These facts are drawn from the allegations in the complaint captioned *Lydia Garcia vs. JAKKS Pacific, Inc., et al.*, Civil Action No. 04-CV-8807-KMK (the "*Garcia* Action").

improperly obtained; and (c) given the foregoing, the Company was subject to the heightened risk that the WWE would seek some modification to its WWE licensing agreements or complete nullification of those agreements, which would negatively impact the Company's future financial results.

On October 19, 2004, JAKKS issued a press release announcing that it was "engaged in discussions with WWE concerning the restructuring of its toy license and with WWE and THQ with respect to the restructuring of the JAKKS THQ Joint Venture video games license agreement with WWE." In response to the announcement of the problems with the WWE licenses, the price of JAKKS stock declined from $24.15 per share to $18.81 per share. Then, after the market closed for trading, it was reported that the WWE had just filed a lawsuit against JAKKS which alleged that the videogame license and certain toy licenses that the WWE previously granted to JAKKS were obtained through a pattern of racketeering and commercial bribery and seeking, among other things, that the licensing agreements be declared void. Following this announcement, on the next day of trading, the price of JAKKS common stock continued to fall to close at $12.96 per share on extremely heavy trading volume.

Subsequent to the filing of the complaint, on November 16, 2004, JAKKS issued a press release announcing that it entered into a worldwide licensing agreement with WWE to develop and market WWE® TV Games. The press release gave the impression that JAKKS and WWE had resolved their differences. However, it was later disclosed, by WWE, that the deal was only an amendment to an earlier agreement that is now in dispute and the litigation between the two companies is continuing.

## III.  ARGUMENT

### A.  INDIANA ELECTRICAL WORKERS SHOULD BE APPOINTED LEAD PLAINTIFF

#### 1.  The Procedure Required by the PSLRA

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §§78u-4(a)(3)(A)(i). Plaintiff in the *Garcia* Action caused the first notice regarding the pendency of these actions to be published on *Business Wire,* a national, business-oriented newswire service, on November 5, 2004. *See* Alba Decl. Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§78u-4(a)(3)(A) and (B).[5]

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

---

[5]  Pursuant to the Court's Order dated January 4, 2005, the time to file lead plaintiff motions was stayed until the January 25, 2005 conference. At the January 25, 2005 conference, the Court set a deadline of February 1, 2005 for filing any motions seeking appointment as lead plaintiff.

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii). *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

### 2. Indiana Electrical Workers Satisfies the "Lead Plaintiff" Requirements of the Exchange Act

#### a. Indiana Electrical Workers Has Complied with the Exchange Act and Should Be Appointed Lead Plaintiff

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. §78u-4(a)(3)(A) and (B) expires on February 1, 2005.[6] Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on November 5, 2004), Indiana Electrical Workers timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Indiana Electrical Workers has duly signed and filed a certification stating that it is willing to serve as the representative party on behalf of the class. *See* Alba Decl. Ex. C. In addition, Indiana Electrical Workers has selected and retained competent counsel to represent it and the class. *See* Alba Decl. Ex. D. Accordingly, Indiana Electrical Workers has satisfied the individual requirements of 15 U.S.C. §78u-4(a)(3)(B) and is entitled to have its application for appointment as Lead Plaintiff and selection of Lead Counsel as set forth herein, considered and approved by the Court.

---

[6] Although the statutory deadline for filing such motions was January 4, 2005, the Court stayed the filing of any motions until February 1, 2005.

### b. Indiana Electrical Workers Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, organized institutional investors to play a more prominent role in securities class actions. See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. Indiana Electrical Workers, as an institutional investor, is precisely the type of lead plaintiff Congress envisioned when it passed the PSLRA. *See id*. ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.")

### c. Indiana Electrical Workers Has the Requisite Financial Interest in the Relief Sought By the Class

During the Class Period, as evidenced by, among other things, the accompanying signed certification, *see* Alba Decl. Ex. C, Indiana Electrical Workers purchased thousands of JAKKS shares in reliance upon the materially false and misleading statements issued by the defendants and were injured thereby. In addition, Indiana Electrical Workers incurred a substantial $5,164.00 loss on its transactions in JAKKS shares. Indiana Electrical Workers thus has a significant financial interest in this case. Therefore, Indiana Electrical Workers satisfies all of the PSLRA's prerequisites

for appointment as Lead Plaintiff in this Action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. 78u-4(a)(3)(B).

### d.    Indiana Electrical Workers Otherwise Satisfies Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *20, (N.D. Ill. Aug. 6, 1997); *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ -T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997). Indiana Electrical Workers satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be

- 7 -

no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981).

Indiana Electrical Workers satisfies this requirement because, just like all other class members, it: (1) purchased JAKKS shares during the Class Period; (2) purchased JAKKS shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, Indiana Electrical Workers' claims are typical of those of other class members since its claims and the claims of other class members arise out of the same course of events. Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of Indiana Electrical Workers to represent the class to the existence of any conflicts between the interest of Indiana Electrical Workers and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who are qualified, experienced and able to vigorously conduct the proposed litigation. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, Indiana Electrical Workers is an adequate representative of the class. As evidenced by the injuries suffered by Indiana Electrical Workers, who purchased JAKKS shares at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of Indiana Electrical Workers are clearly aligned with the members of the class, and there is no evidence of any antagonism between Indiana Electrical Workers' interests and those of the other members of the class. Further, Indiana Electrical Workers has taken significant steps which demonstrate it will protect the interests of the class: it has retained competent and experienced counsel to prosecute these claims. In addition, as shown below, Indiana Electrical Workers' proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Indiana Electrical Workers prima facie satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### B.    THE COURT SHOULD APPROVE INDIANA ELECTRICAL WORKERS' CHOICE OF COUNSEL

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class he seeks to represent. In that regard, Indiana Electrical Workers has selected the law firm of Lerach Coughlin as Lead Counsel, a firm which has substantial experience in the prosecution of shareholder and securities class actions. *See* Alba Decl. Ex. D. Accordingly, the Court should approve Indiana Electrical Workers' selection of counsel.

### IV.    CONCLUSION

For all the foregoing reasons, Indiana Electrical Workers respectfully requests that the Court: (i) appoint Indiana Electrical Workers as Lead Plaintiff in the Action; (ii) approve its selection of Lead Counsel as set forth herein; and (iii) grant such other relief as the court may deem just and proper.

DATED: February 1, 2005

LERACH COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN (SR-7957)
DAVID A. ROSENFELD (DR-7564)
MARIO ALBA JR. (MA-7240)


       /s/ Mario Alba Jr.
MARIO ALBA JR.

200 Broadhollow Road, Suite 406
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

[Proposed] Lead Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, Mario Alba, Jr., hereby certify that on February 1, 2005, I caused a true and correct copy of the attached:

> Notice Of Motion For Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel;
>
> Declaration Of Mario Alba Jr. In Support Of The Motion Of Indiana Electrical Workers For Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel; and
>
> Memorandum In Support Of The Motion Of Indiana Electrical Workers For Appointment As Lead Plaintiff And For Approval Of Selection Of Lead Counsel.

to be served: (i) electronically on all counsel registered for electronic service for this case; and (ii) by first-class mail to all additional counsel on the attached service list.

      /s/ Mario Alba Jr.
      Mario Alba, Jr.

JAKKS PACIFIC
Service List - 1/14/2005   (04-0446)
Page 1 of 2

**Counsel For Defendant(s)**

John R. Williams
Schweitzer Cornman Gross & Bondell, LLP
292 Madison Avenue
New York, NY 10017
　646/424-0770
　646/424-0880 (Fax)

Isaac S. Greaney
Sidley Austin Brown & Wood
787 7th Avenue, 22nd Floor
New York, NY 10019
　212/906-2000
　212/906-2021 (Fax)

Michael H. Gruenglas
Skadden, Arps, Slate, Meagher & Flom LLP
Four Times Square
New York, NY 10036
　212/735-3000
　212/735-2000 (Fax)

**Counsel For Plaintiff(s)**

Alfred G. Yates, Jr.
Gerald L. Rutledge
Law Offices of Alfred G. Yates, Jr., P.C.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
　412/391-5164
　412/471-1033 (Fax)

Samuel H. Rudman
David A. Rosenfeld
Lerach Coughlin Stoia Geller Rudman & Robbins LLP
200 Broadhollow Road, Suite 406
Melville, NY 11747
　631/367-7100
　631/367-1173 (Fax)

Louis F. Burke
Louis F. Burke, P.C.
460 Park Avenue, 21st Floor
New York, NY 10022
　212/682-1700
　212/808-4280 (Fax)

Steven G. Schulman
Peter E. Seidman
Sharon M. Lee
Milberg Weiss Bershad & Schulman LLP
One Pennsylvania Plaza
New York, NY 10119
　212/594-5300
　212/868-1229 (Fax)

JAKKS PACIFIC
Service List - 1/14/2005   (04-0446)
Page 2 of 2

Eric J. Belfi
Murray, Frank & Sailer LLP
275 Madison Avenue, Suite 801
New York, NY  10016
   212/682-1818
   212/682-1892 (Fax)

William E. Bernarduci
Nancy A. Kulesa
Schatz & Nobel, P.C.
One Corporate Center
20 Church Street, Suite 1700
Hartford, CT  06103
   860/493-6292
   860/493-6290 (Fax)

Marc A. Topaz
Richard A. Maniskas
Schiffrin & Barroway, LLP
Three Bala Plaza East, Suite 400
Bala Cynwyd, PA  19004
   610/667-7706
   610/667-7056 (Fax)

Richard B. Brualdi
The Brualdi Law Firm
29 Broadway, 24th Floor
New York, NY  10006
   212/952-0602
   212/952-0608 (Fax)

Fred T. Isquith
Christopher S. Hinton
Wolf Haldenstein Adler Freeman & Herz, LLP
270 Madison Avenue
New York, NY  10016
   212/545-4600
   212/545-4653 (Fax)

Marian P. Rosner
Ken H. Chang
Michael A. Schwartz
Wolf Popper LLP
845 Third Avenue
New York, NY  10022
   212/759-4600
   212/486-2093 (Fax)