UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE JAKKS PACIFIC, INC. SHAREHOLDERS CLASS ACTION LITIGATION | Case No. 04-CV-8807 (KMK) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF QUANTUM EQUITIES LLC AND FRANK WHITING FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL**

Plaintiffs Quantum Equities LLC and Frank Whiting submit this memorandum of law in support of their motion for: (i) appointment as Lead Plaintiff, pursuant to Section 21D of the Securities Exchange Act of 1934 (the "1934 Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (ii) approval of Lead Plaintiff's selection of Lead Counsel.

## INTRODUCTION

This Action is a securities fraud class action brought against Jakks Pacific, Inc. ("Jakks" or the "Company") certain Jakks' officers and directors (all collectively, "Defendants"). The complaint alleges violations of Sections 10(b) and 20(a) of the 1934 Act, and Rule 10b-5 promulgated thereunder, on behalf of a class (the "Class") consisting of all persons, other than defendants, who acquired Jakks securities during the period from October 26, 1999 to October 19, 2004, inclusive (the "Class Period").

Movants Quantum Equities LLC and Frank Whiting ("Movants") collectively acquired 53,750 shares of Jakks common stock during the Class Period and suffered $297,422.50 in losses as a result of Defendants' misconduct. Movants seek Court approval of their appointment as

Lead Plaintiff and their selection of Lead Counsel for plaintiffs and the Class as set forth herein. Movants clearly have the largest financial interest in the litigation by any measure. See, e.g., In re Olsten Corp., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998)(citing Lax v. First Merchants Acceptance Corp., 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *5 (N.D. Ill. Aug. 11, 1997)). Also, see Bassin v. Decode, 04 Civ. 7050 (RJH), 2005 U.S. Dist. LEXIS 51, at *8 (S.D.N.Y. Jan. 3, 2005) (Holwell, J.) Quantum Equities LLC is an institutional investment vehicle and a sophisticated investor. As discussed below, movants have satisfied each of the requirements of the PSLRA and this Court and, therefore, are qualified for appointment as Lead Plaintiff in this Action.

## PROCEDURAL BACKGROUND

On October 19, 2004, the plaintiff in the Garcia action[1] filed a complaint on behalf of a class consisting of all persons who purchased the securities of Jakks during a proposed Class Period of between February 17, 2004 and October 19, 2004, inclusive. Movant Quantum Equities LLC filed a related case with a Class Period of between October 26, 1999 and October 19, 2004, inclusive. In judging "financial interest" of applicants for lead plaintiff, courts examine the most inclusive of the class periods in filed complaints. (See In re Party City Sec. Litig., 189 F.R.D. 91, 94 n.3 (D.N.J. 1999). Additional class action securities cases were filed on behalf of investors. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on November 5, 2004, plaintiff in the Garcia action published notice of the pendency of the action over a widely-available, national business-oriented newswire service, Business Wire, advising members of the proposed class of their right to move the Court to serve as lead plaintiff(s) no later than 60 days from the date of

---

[1]   Lydia Garcia. v. Jakks Pacific, Inc., et al., 04-cv-08807-KMK.

publication of the notice.[2]  See Bruckner Decl., Ex. A.  Movants then filed their motion on January 4, 2005, within the 60-day period following publication of the November 5, 2004 notice as mandated by the PSLRA.  In accordance with this Court's request, movants, without prejudice, then withdrew their motion.  At a January 25, 2004, pre-motion conference, this Court consolidated the five securities class actions and directed that motions for appointment of lead plaintiff and lead counsel be filed no later than February 1, 2005.

## STATEMENT OF FACTS[3]

Jakks is a multi-line, multi-brand toy company that designs, develops, produces and markets toys and related products. The focus of the Company's business is on acquiring or licensing well-recognized trademarks and brand names with long product histories. Jakks products are typically simpler, lower-priced, toys and accessories.  Jakks corporate offices are located at 22619 Pacific Coast Highway, Malibu, California 90265.  The Company also participates in a joint venture with THQ Inc. that has exclusive worldwide rights to publish and market WWE video games.  In addition, the Company sells action figures and accessories including licensed characters, principally based on WWE among others.

Throughout the Class Period, defendants issued statements, press releases and filed reports with the SEC describing the Company's business operations and financial condition. These representations were materially false and misleading throughout the Class Period because the defendants failed to disclose and misrepresented the following adverse facts: (a) the

---

[2]  On November 9, 2004, hours after it filed its action, plaintiff Quantum Equities LLC caused notice of pendency of its own Class Period action to be published over the widely available, national business-oriented newswire service, PRNewswire.  See Bruckner Decl., Ex B.

[3]  All facts are taken from the complaint styled Quantum Equities LLC v. Jakks Pacific, Inc., et al., 04-cv-08877-KMK, which is attached to this motion as per Your Honor's Individual Practices.  See Bruckner Decl., Ex. F.

390728v3

Company had obtained the WWE license as a result of its participation in an illicit bribery scheme; (b) the Company's success in obtaining at least one lucrative license was not reflective of the Company's ability to enter into licensing agreements through arms-length transactions but was, instead, reflective of the Company's perpetration of an unsustainable business tactic; (c) discovery of the Company's participation in the bribery scheme would substantially impact the Company's past, present and future revenue stream from the WWE license as the terms of the license could be materially modified, or revoked in its entirety, and the Company would be exposed to significant liability in the form of damages sought by WWE; (d) the Company's viability as an ongoing business operation would be materially impacted by potential business partners' reluctance to conduct business with an entity involved in such a bribery scheme; and (e) the Company's revenues and earnings would have been significantly less had the Company not engaged in the bribery scheme.

On October 19, 2004, at 3:00 a.m., the Company issued a press release entitled, "JAKKS Pacific Reports Third Quarter 2004 Financial Results" wherein the Company announced "record results" including a 128.2% increase in net sales for the third quarter and an increase of 148.8% in reported income for the third quarter 2004 as compared to the same period in 2003. In the press release, defendant Berman commented on the Company's financial performance as follows:

> We are pleased with the performance of our new products obtained through the acquisition of Play Along, including our new Cabbage Patch Kids(R) dolls and Care Bears(R) plush and preschool learning toys.
>
> Our ability to reinvent and expand our portfolio of brands is most evident in our traditional toys segment, which includes action figures, wheels, TV Games and plush dolls. We have maintained our industry-leading position in TV Games, and expect to continue to capitalize on this growing market in the coming quarters through innovation and new products based on top current and retro

> licenses. By the end of 2004, we will have a total of 12 TV Games(TM) products in the market, up from four at the end of 2003. We have also begun to expand our distribution of the games to international markets, including Europe, Australia and New Zealand. Looking to 2005, JAKKS will be introducing over 20 new exciting titles.
>
> We are very encouraged about the upcoming holiday season based on early responses from our retail partners. We anticipate that Care Bears, Cabbage Patch Kids and TV Games will top several `Hot Toy' lists for the 2004 holiday season, as they have been named to several already. We have secured prime placement at retailers nationwide for our TV Games line in the fourth quarter of this year, and expect our plush toys and World Wrestling Entertainment product lines, as well as other lines, to perform very well.
>
> Our strong performance led to $86.4 million in cash flow from operations during the first nine months of 2004. We have over $218.5 million of working capital, including cash and equivalents and marketable securities of $151.9 million. Given the increasing strength of our balance sheet, we are well positioned to take advantage of acquisition opportunities and to continue to deliver both sales and earning expansion throughout 2004 and beyond.

At the end of the lengthy press release, after the many positive comments regarding the Company's performance, the press release stated:

> The Company also announced that it is engaged in discussions with WWE concerning the restructuring of its toy license and with WWE and THQ with respect to the restructuring of the JAKKS THQ Joint Venture video games license agreement with WWE. The discussions are an outgrowth of certain litigation that has been pending between WWE and a former licensing consultant to WWE and a former employee of WWE, to which the Company is not a party. WWE has raised questions about the validity of the licenses as a result of certain transactions between the Company and that licensing consultant that occurred more than six years ago. The Company has denied any wrongdoing in connection with the transactions with the licensing consultant and maintains that they were unrelated to either the toy or video game license. If the discussions are satisfactorily concluded, the restructuring of the licenses may have an impact on the Company's future revenues and net income to an extent that is presently unknown. If the discussions with WWE and THQ are not satisfactorily concluded, the Company anticipates that litigation is likely to be commenced

5

>by WWE challenging the validity of the licenses and seeking compensatory and punitive damages, in which event the Company intends to vigorously defend itself against claims which it believes are without merit.

The Company's ambiguous statement regarding "certain litigation" between parties other than itself failed to disclose the true nature of the dispute between itself and WWE and completely disclose the full extent to which the dispute impacted the Company's past, present and future business operations. The October 19th press release's failure to serve as adequate disclosure is evidenced by the trading activity of the Company's stock that same day, when the price of the Company's stock opened flat, without change, from the prior day's closing price.

Later on October 19, 2004, WWE commenced a civil action against Jakks. The commencement of the WWE lawsuit was the first complete disclosure setting forth the full extent of the seriousness of the allegations made against the Company.

On October 19, 2004, at 9:51pm, Jakks issued a press release in response to the WWE lawsuit. The press release stated:

>JAKKS Pacific, Inc. announced that a civil lawsuit was filed in the United States District Court for the Southern District of New York yesterday afternoon by World Wrestling Entertainment, Inc. ("WWE") concerning the video game license between WWE and the joint venture company operated by the Company and THQ, Inc. and the toy license between the Company and WWE. The Company denies any allegations of wrongdoing and believes that it will be completely vindicated in the litigation, and looks forward to having the claims against it dismissed. The Company will continue to devote its full energies and resources to bringing its outstanding products to market during the busy holiday season and beyond.

With the additional information provided to the marketplace through the WWE lawsuit, the market's reaction was strong and swift. On October 20, 2004, the first trading day in which the investing public had knowledge of the full extent of Jakks participation in the purported

bribery scheme, the Company's stock opened for trading at $15.28, down $3.53 per share from the previous day's close. The stock would close at $12.96 per share on October 20, 2004.

## ARGUMENT

I.  **MOVANTS QUANTUM EQUITIES LLC AND FRANK WHITING SHOULD BE APPOINTED LEAD PLAINTIFF**

   A.  **The Procedure Required By the PSLRA**

The PSLRA has established the procedure that governs the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Plaintiff in the Garcia action caused notice to be published via Business Wire on November 5, 2004. See Bruckner Decl., Ex. A. Additionally, on November 9, 2004, Plaintiff Quantum Equities LLC caused Notice to be published via PRNewswire of its expanded Class Period action filed with this Court. See Bruckner Decl., Ex. B. Second, within 60 days after publication of the first notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. § 78u-4(a)(3)(A) and (B). This Court, in its Order dated January 25, 2005, directed that motions to appoint lead plaintiff and lead counsel be filed no later than February 1, 2005.

Third, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines to be most capable of adequately representing

the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that --
>
> (aa) has either filed the complaint or made a motion in response to a notice . . .
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii). See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996). See also In re Cavanaugh, 306 F.3d 726, 729 n.2 (9th Cir. 2002): "The Act sets up a rebutttable presumption that the plaintiff with the largest stake in the controversy will be the lead plaintiff." Movants satisfy each of these criteria and specifically have the largest financial interest in the relief sought by the class.

### B. Movants Quantum Equities LLC and Frank Whiting Satisfy the "Lead Plaintiff" Requirements of the PSLRA

#### 1. Movants Quantum Equities LLC and Frank Whiting Have Complied With the PSLRA and this Court's Order and Should Be Appointed Lead Plaintiff

Pursuant to the provisions of the PSLRA and this Court's January 25, 2005 Order, Movants Quantum Equities LLC and Frank Whiting have timely moved to be appointed lead plaintiff within the requisite time frame on behalf of all members of the Class.

Movants have duly signed and filed certifications stating that they have reviewed the complaint filed in the action and are willing to serve as a representative party on behalf of the Class. See Bruckner Decl., Ex. C. In fact, Movant Quantum Equities LLC was the plaintiff in the first filed action with the Class Period of between October 26, 1999 and October 19, 2004,

inclusive. In addition, Movants have selected and retained experienced and competent counsel to represent itself and the Class. See Bruckner Decl., Ex. E.

Accordingly, Movants have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff and selection of counsel, as set forth herein, considered and approved by the Court.

### 2. Movants Have the Largest Financial Interest in the Relief Sought By the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as lead plaintiff the class member or members who represent the largest financial interest in the relief sought by the action. "In light of the PSLRA's silence in prescribing a method for assessing a movant's financial interest, courts have examined several factors such as: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." Bassin v. Decode, 04 Civ. 7050 (RJH), 2005 U.S. Dist. LEXIS 51, at *8 (S.D.N.Y. Jan. 3, 2005) (Holwell, J.) See also Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc., 03 Civ. 8264 (RWS), 2004 U.S. Dist. LEXIS 9571, at *7 (S.D.N.Y. May 27, 2004) (quoting Lax v. First Merchants Acceptance Corp., 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *5 (N.D. Ill. Aug. 11, 1997)); Sczesny Trust v. KPMG LLP, 223 F.R.D. 319, 323 (S.D.N.Y. 2004); Ferrari v. Impath, 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898, (S.D.N.Y. July 15,2004), at *4.

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, Movants Quantum Equities LLC and Frank Whiting acquired 53,750 shares of Jakks common stock for $1,213,867.45 and thereby suffered $297,422.50 in losses[4] as a result of

---

[4] Movants actually lost $431,822.50 on Class Period purchased stock. During the Class Period (continued...)

Defendants' misconduct. Movants herein have a significant financial interest in this case.[5] Movants have not received notice of any other applicant or applicant group that has sustained greater financial losses in connection with the purchase and/or sale of the Company's common stock. Therefore, Movants satisfy all of the PSLRA's prerequisites and the practice of this judicial district for appointment as Lead Plaintiff in this action and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

### 3. Movants Otherwise Satisfy Rule 23

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as lead plaintiff, the Court shall limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the

---

(...continued)

Movants also sold $134,400 of pre-Class Period purchased stock. They therefore report the more conservative figure of $297,400.50. See Bruckner Decl., Ex. D.

[5] It is well established in this judicial district that the presumptive Lead Plaintiff is the movant with the largest financial interest in the litigation. See Ferrari v. Impath, 03 Civ. 5667 (DAB), 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004)(Batts, J.) where Plaintiffs Group with largest financial interest in the Class appointed Lead Plaintiff.

390728v3

lead plaintiff moves for class certification. Lax v. First Merchants Acceptance Corp., 97 Civ. 2715, 1997 U.S. Dist. LEXIS 11866, at *20 (N.D. Ill. Aug. 11, 1997); Fischler v. Amsouth Bancorporation, 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-*8 (M.D. Fla. Feb. 6, 1997); Zaltzman v. Manugistics Group, Inc., S-98-1881, 1998 U.S. Dist. LEXIS 22867, at *20 (D. Md. Oct. 8, 1998).

Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as lead plaintiff. Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists if claims "arise from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." See In re Drexel Burnham Lambert Group, Inc., 960 F.2d 285, 291 (2d Cir. 1992), cert. dismissed sub nom., 506 U.S. 1088 (1993); In re Cable & Wireless, PLC, Sec. Litig., 217 F.R.D. 372, 375 (E.D. Va. 2003); In re MicroStrategy Inc. Sec. Litig., 110 F. Supp. 2d 427, 435-36 (E.D. Va. 2000). However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. Instead, the courts have recognized that:

> [T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.

Bishop v. New York City Dep't of Hous. Pres. and Dev., 141 F.R.D. 229, 238 (S.D.N.Y. 1992). See also Avagliano v. Sumitomo Shoji America, Inc., 103 F.R.D. 562, 582 (S.D.N.Y. 1984).

Movants seek to represent a class of all persons, other than defendants, who acquired Jakks securities during the Class Period, who have identical, non-competing and non-conflicting interests. Movants satisfy the typicality requirement because they: (i) acquired Jakks securities during the Class Period; (ii) at a price allegedly artificially inflated as a result of Defendants' violations of the federal securities laws; and (iii) suffered damages thereby. Thus, typicality is

satisfied since the claims asserted by Movants "arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory." Walsh v. Northup-Grumman Corp., 162 F.R.D. 440, 445 (E.D.N.Y. 1995).

Under Rule 23(a)(4) the representative party must also "fairly and adequately protect the interests of the class." The standard for adequacy of representation under Rule 23(a)(4) is met by : (1) the absence of potential conflict between the named plaintiff and the class members, and (2) the class representative's choice of counsel who is qualified, experienced and able to vigorously conduct the proposed litigation. Garfinkel v. Memory Metals, Inc., 695 F. Supp. 1397, 1405 (D. Conn. 1988).

Movants are adequate representatives of the class. As evidenced by the injury suffered by Movants, which acquired Jakks securities at prices allegedly artificially inflated by Defendants' violations of the federal securities laws, the interests of Movants clearly aligned with the members of the class, and there is no evidence of any antagonism between Movants' interests and those of the other members of the class. In addition, as shown below, Movants proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Movants prima facie satisfy the commonality, typicality and adequacy requirements of Rule 23.

Clearly, the Proposed Lead Plaintiff satisfies all prongs of the Exchange Act's prerequisites for appointment as Lead Plaintiff in this action pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii).

## II. THE COURT SHOULD APPROVE MOVANTS QUANTUM EQUITIES LLC AND FRANK WHITING'S CHOICE OF COUNSEL

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), proposed lead plaintiff shall, subject to court approval, select and retain counsel to represent the class they seek to represent. In that regard,

Movants have selected and retained Wolf Haldenstein Adler Freeman & Herz LLP to serve as Lead Counsel for the Class. This firm has extensive experience in successfully prosecuting complex securities actions and has frequently appeared in major actions in this and other courts. See Bruckner Decl., Ex. E.

Because there is nothing to suggest that Movants or their counsel will not fairly and adequately represent the Class, or that Movants are subject to unique defenses – which is the only evidence that can rebut the presumption of adequacy under the Act – this Court should appoint Movants as Lead Plaintiff and approve their selection of Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel for the Class.[6]

---

[6] At the January 25, 2005, Pre-Trial Conference, Your Honor asked counsel to give consideration to methodologies other than that specified by the PSLRA for selection of Lead Plaintiff and Lead Counsel. The Court alluded to In Re Auction Houses Antitrust Litigation 197 F.R.D. 71 (S.D.N.Y. 2000) and In Re Razorfish, Inc. Securities Litigation 143 F. Supp. 2d 304 (S.D.N.Y. 2001). It is important to note that In Re Auction Houses Antitrust Litigation was an anti-trust action, not subject to the provisions of the PSLRA. More than twenty applications were made for lead counsel. Judge Kaplan noted, however, that, "…use of price as the sole criterion for selection does nothing to ensure that plaintiffs receive quality representation. The lead counsel auction unwittingly may undermine also the efficacy of the class action device." In Re Auction Houses Antitrust Litigation 197 F.R.D. 71, 81 (S.D.N.Y. 2000). Judge Rakoff, in his In Re Razorfish, Inc. Securities Litigation 143 F. Supp. 2d 304, 310 (S.D.N.Y. 2001), opinion, strongly rejected an auction process as contrary to the provisions of the PSLRA, "it is not, in this Court's view, remotely consistent with the Reform Act." The Ninth Circuit, in In re Cavanaugh, 306 F.3d 726, 729-30 (9th Cir. 2002), has written on the procedures the PSLRA requires: "The Reform Act provides a simple three-step process for identifying the lead plaintiff pursuant to these criteria. The first step consists of publicizing the pendency of the action, the claims made and the purported class period. 15 U.S.C. § 78u-4(a)(3)(A). The first plaintiff to file an action covered by the Reform Act must post this notice "in a widely circulated national business--oriented publication or wire service." 15 U.S.C. § 78u-4(a)(3)(A)(i). The notice must also state that "any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). In step two, the district court must consider the losses allegedly suffered by the various plaintiffs before selecting as the "presumptively most adequate plaintiff" – and hence the presumptive lead plaintiff -- the one who "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In other words, the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy." If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff. If the (continued…)

## CONCLUSION

For the foregoing reasons, Movants request that the Court: (i) appoint Movants Quantum Equities LLC and Frank Whiting as Lead Plaintiff in the Action; and (ii) approve Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel for the Class.

DATED:  February 1, 2005
        New York, New York

                                        Respectfully submitted,

                                        **WOLF HALDENSTEIN ADLER**
                                        **FREEMAN & HERZ LLP**


                                        By: _____
                                            Fred Taylor Isquith, Esq. (FI-6782)
                                            Gustavo Bruckner, Esq. (GB-7701)
                                            Christopher Hinton, Esq. (CH-0759)
                                        270 Madison Avenue
                                        New York, New York 10016
                                        Telephone: (212) 545-4600
                                        Facsimile: (212) 545-4653

                                        **Proposed Lead Counsel**

---

(…continued)

plaintiff with the greatest financial stake does not satisfy the Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23."

Additionally, the Ninth Circuit noted that, "Congress enacts statutes, not purposes, and courts may not depart from the statutory text because they believe some other arrangement would better serve the legislative goals. *** [A] straightforward application of the statutory scheme, as outlined above, provides no occasion for comparing plaintiffs with each other on any basis other than their financial stake in the case … So long as the plaintiff with the largest loss satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." Id. at 731-2. The Ninth Circuit insisted that "[w]e have never approved this practice [bidding] and note our agreement with the Third Circuit that '*an auction is not generally permissible in a Reform Act case*.'" Id. at 734 n.14 (citing In re Cendant Corp. Litig., 264 F.3d 201, 273 (3d Cir. 2001)) (emphasis added).

Louis F. Burke, Esq. (LB-4686)
**Louis F. Burke P.C.**
460 Park Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 682-1700
Facsimile: (212) 808-4280

**Additional Plaintiff's Counsel**

# TABLE OF CONTENTS

**PAGE NO.**

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ..................................................................................................................... 1

PROCEDURAL BACKGROUND............................................................................................ 2

STATEMENT OF FACTS ........................................................................................................ 3

ARGUMENT.............................................................................................................................. 7

I.   MOVANTS QUANTUM EQUITIES LLC AND FRANK
     WHITING SHOULD BE APPOINTED LEAD PLAINTIFF........................................ 7

     A.   The Procedure Required By the PSLRA ............................................................... 7

     B.   Movants Quantum Equities LLC and Frank Whiting
          Satisfy the "Lead Plaintiff" Requirements of the PSLRA ..................................... 8

          1.   Movants Quantum Equities LLC and Frank Whiting
               Have Complied With the PSLRA and this Court's
               Order and Should Be Appointed Lead Plaintiff.......................................... 8

          2.   Movants Have the Largest Financial Interest in the
               Relief Sought By the Class .......................................................................... 9

          3.   Movants Otherwise Satisfy Rule 23 .......................................................... 10

II.  THE COURT SHOULD APPROVE MOVANTS QUANTUM
     EQUITIES LLC AND FRANK WHITING'S CHOICE OF COUNSEL ....................... 12

CONCLUSION......................................................................................................................... 14

# TABLE OF AUTHORITIES

## CASES

Page(s)

In Re Auction Houses Antitrust Litigation,
   197 F.R.D. 71 (S.D.N.Y. 2000) ................................................................................................13

Avagliano v. Sumitomo Shoji America, Inc.,
   103 F.R.D. 562 (S.D.N.Y. 1984) ..............................................................................................11

Bassin v. Decode,
   04 Civ. 7050,
   2005 U.S. Dist. LEXIS 51 (S.D.N.Y. Jan. 3, 2005) ...............................................................2, 9

Bishop v. New York City Department of Housing Preservation and Development,
   141 F.R.D. 229 (S.D.N.Y. 1992) ..............................................................................................11

In re Cable & Wireless, PLC, Sec. Litigation,
   217 F.R.D. 372 (E.D. Va. 2003) ...............................................................................................11

In re Cavanaugh,
   306 F.3d 726 (9th Cir. 2002) .................................................................................................8, 13

In re Drexel Burnham Lambert Group, Inc.,
   960 F.2d 285 (2d Cir. 1992),
   cert. dismissed sub nom., 506 U.S. 1088 (1993) ......................................................................11

Ferrari v. Impath,
   03 Civ. 5667,
   2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004) ......................................................9, 10

Fischler v. Amsouth Bancorporation,
   96-1567-C,
   1997 U.S. Dist. LEXIS 2875 (M.D. Fla. Feb. 6, 1997) ............................................................10

Garfinkel v. Memory Metals, Inc.,
   695 F. Supp. 1397 (D. Conn. 1988) ..........................................................................................12

Greebel v. FTP Software,
   939 F. Supp. 57 (D. Mass. 1996) ................................................................................................8

Lax v. First Merchants Acceptance Corp.,
   97 Civ. 2715,
   1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 11, 1997) ..........................................................10

390728v3

<u>In re MicroStrategy Inc. Sec. Litigation</u>,
    110 F. Supp. 2d 427 (E.D. Va. 2000) ...........................................................................11

<u>In re Olsten Corp.</u>,
    3 F. Supp. 2d 286 (E.D.N.Y. 1998) ................................................................................2

<u>In re Party City Sec. Litigation</u>,
    189 F.R.D. 91 (D.N.J. 1999) ...........................................................................................2

<u>Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.</u>,
    03 Civ. 8264,
    2004 U.S. Dist. LEXIS 9571 (S.D.N.Y. May 27, 2004) .................................................9

<u>In Re Razorfish, Inc. Securities Litigation</u>,
    143 F. Supp. 2d 304 (S.D.N.Y. 2001) ..........................................................................13

<u>Sczesny Trust v. KPMG LLP</u>,
    223 F.R.D. 319 (S.D.N.Y. 2004) ...................................................................................9

<u>Walsh v. Northup-Grumman Corp.</u>,
    162 F.R.D. 440 (E.D.N.Y. 1995) .................................................................................12

<u>Zaltzman v. Manugistics Group, Inc.</u>,
    S-98-1881,
    1998 U.S. Dist. LEXIS 22867 (D. Md. Oct. 8, 1998) .................................................11

**STATUTES**

15 U.S.C. § 78u-4(a)(3) ............................................................................................ <u>passim</u>