UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE JAKKS PACIFIC, INC. SHAREHOLDERS CLASS ACTION LITIGATION | Case No. 04-CV-8807 (KMK) |
|---|---|

**MEMORANDUM OF LAW OF THE QUANTUM EQUITIES GROUP IN REPLY TO THE RESPONSE OF IEW DATED APRIL 4, 2005 AND IN FURTHER SUPPORT OF THE QUANTUM EQUITIES GROUP'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF WOLF HALDENSTEIN AND MILBERG WEISS AS CO-LEAD COUNSEL**

The Quantum Equities Group submits this memorandum of law pursuant to the instructions given by this Court at the March 28, 2005 hearing (the "Hearing") in reply to the response of IEW and in further support of its motion for appointment as lead plaintiff and approval of its selection of lead counsel.

## INTRODUCTION

The Quantum Equities Group has the largest financial interest in this litigation, is fully adequate and typical and, therefore, is the most adequate plaintiff and should be appointed Lead Plaintiff. Indeed, the only remaining movant, IEW, does not seriously dispute that the Quantum Equities Group has the largest financial interest of any movant.[1] Instead, in its responsive memorandum, and its letter to the Court dated April 6, 2005, IEW makes red-herring arguments,

---

[1] IEW conceded, in its April 6, 2005 letter (at p. 2, n.3), that it may not have the largest financial interest in this litigation, stating that "Indiana Electrical Workers' position has been, and continues to be, that while it might not have the largest loss on a 'numbers only' analysis, it certainly has the largest loss of any other *bona fide* movant who is otherwise adequate and typical of the rest of the class."). IEW's conclusion with respect to its "numbers only" financial interest in this litigation is borne out by Exhibit E to the Quantum Equities Group Memo, dated April 4, 2005 (the "Quantum Equities Group Memo").

which, for the reasons set forth herein, at the Hearing and in the Quantum Equities Group Memornadum,

## ARGUMENT

I. **THE LIAISON BETWEEN QUANTUM EQUITIES AND THE TUCKER FAMILY IS CONSISTENT WITH THE COURT'S GUIDANCE AND IS PERMISSIBLE UNDER THE PSLRA**

Counsel for IEW's insinuations with respect to the formation of the Quantum Equities Group (See April 6, 2005 letter at p. 2) are unsubstantiated and contrary both to this Court's statements at the Hearing and the abundant case law that allows for the re-ordering of movants so as to attain the most adequate plaintiff.  See, e.g, Malasky v. IAC/InteractiveCorp, 04 Civ. 7447 (RJH), 2004 U.S. Dist. LEXIS 25832 (S.D.N.Y. Dec. 20, 2004); Pirelli Armstrong Tire Corp v. Labranche & Co., Inc., No. 03 Civ. 8264 (RWS), 2004 U.S. Dist. LEXIS 9571 (S.D.N.Y May 27, 2004).  Indeed, IEW itself proposed such a grouping[2], as did the Court, as follows:

> THE COURT:   And, you know, the thing that I haven't asked anybody to explicitly address is IBEW's suggestion that maybe there be a little bit of pairing up here of coleads.  And as I alluded to you earlier, based on the facts as I have them – and I recognize I am missing some key facts – it may very well be that whatever inadequacies one plaintiff may have can be made up by another.  But there is no question as to the counsel.  You are all very experienced, very successful counsel, so that's not the issue.
>
> The issue really is which plaintiff is going to best serve the class under the PSLRA.  And the cases do talk about in certain circumstances permitting coleads.  And I suppose one thing that you may all want to think about in the time while we are getting some of these facts gathered

---

[2] Memorandum In Further Support Of The Motion Of Indiana Electrical Workers For Appointment As Lead Plaintiff And For Approval of Lead Counsel And In Opposition To The Competing Motion dated February 8, 2005, p. 7, n.3.

>   up is if you go for broke or more formal alliance to resolve
>   the issue. [Transcript at 36:9 – 36:23]

*************

>   THE COURT:   I have to pick the best among the lot. But I also
>   have discretion to see if there is a way to cobble together
>   two. The question is who among the plaintiffs, if there
>   can't be one, who among the ones who want the prize can
>   work and best represent the class. [Transcript at 40:8 – 40:12]

## II.   THE TUCKER FAMILY FILED A MOTION

Recognizing that it does not have the largest financial interest, IEW persists in its argument that the Tucker Family is not a *bona fide* movant despite the fact that this Court found otherwise at the Hearing. *See* April 6, 2005 Letter of IEW's counsel.

The Tucker Family is a *bona fide* movant. Pursuant to Section 15 U.S.C. § 78u-4(a)(3)(A)(i) of the PSLRA, the Tuckers timely filed their motion as members of the Tucker Group for appointment as lead plaintiff on January 4, 2005, and upon request of the Court withdrew its motion, filing a "Notice of Withdrawal Without Prejudice Of the Turner [*sic.*] Group's Motion For Consolidation, Appointment as Lead Plaintiff and Approval of Lead Counsel (the "Withdrawal"). The Withdrawal stated that it was "made without prejudice to the Tucker Group's right to refile the motion consistent with the order ***and subsequent proceedings.***" [Emphasis added.] Then, on February 11, 2004, after IEW advised the Court that it was prepared to serve as co-Lead Plaintiff, "together with the other movants in order to properly protect the interests of the Class," the Tucker Group responded that, if another movant is to be appointed Co-Lead Plaintiff with either or both of Quantum Equities and Frank Whiting,

3

the proper movant would not be IEW but rather, Tucker Group members Kenneth J. Tucker and/or Scott J. Pearlstone.[3]

Subsequent proceedings were had on March 28, 2005. At those proceedings, the Tucker Group renewed its motion and the motion was accepted by the Court. The Transcript bears this out:

>    MR. SEIDMAN:   I think at this point our clients would like to be considered as lead plaintiff movants. [Transcript at 35:1 – 35:3]
>
>    ********
>
>    MR. SEIDMAN:   We do have a motion that was made pursuant to the statute, and so we would like the opportunity to be heard on all of these issues and for the court to recognize that we did file a motion pursuant to the ---
>
>    THE COURT:   I do recognize it. [Transcript at 36:5 – 36:9]
>
>    ********
>
>    THE COURT:   But for the record, are you reactivating your motion?
>
>    MR SEIDMAN:   Well, it's our position – it is our position that at this time that we believe that Mr. Isquith's clients are the most adequate in terms of the PSLR [*sic.*] analysis.
>
>    If your Honor were to find that one of his clients were inadequate for whatever reason, then we would like the opportunity to have our clients considered in a colead position with the remaining client.
>
>    THE COURT:   OK. [Transcript at 36:24 – 37:7]

---

[3] Tonia R. Tucker-Kraus and Michael Kraus have since agreed to serve in place of Mr. Pearlstone in response to concerns about in-and-out purchasers. Mr. Pearlstone stands ready and able to serve if so required.

4

**III.   IEW ITSELF IS AN IN-AND-OUT PURCHASER**

At the Hearing, counsel for IEW argued, with respect to movant Frank Whiting, that "the majority of cases have held that in-and-out purchasers do not have any financial interest in pursuing a fraud claim." Transcript at 34:9 – 34:11.[4] The point is repeated in its responsive memorandum. See IEW Response at p. 3. Yet in the very same responsive memorandum, in which it argues the atypicality of in-and-out purchasers, IEW submitted a chart of its class period purchases and sales as Exhibit A that shows that IEW itself is an in-and-out purchaser, having purchased ("in") 3,500 shares between July 7, 2003, and July 11, 2003, and having sold ("out") 3,500 shares by August 13, 2004, which is more than two months before the end of the class period. See also Exhibit E to the Quantum Group's Memorandum (showing that IEW had zero net class period shares purchased).[5] Thus, under its own argument, IEW has no financial interest in the litigation, is itself subject to unique defenses and, therefore, not the most adequate plaintiff.[6] Recognizing the potential validity of the in-and-out argument, and at the invitation of

---

[4] See also, Transcript at 34:16 – 34:21 (in which counsel for IEW cites the following cases for the proposition that in-an-out traders have no financial interest: In re Carreker Corp. Sec. Litig., No. 3:03-CV-0250-M, 2003 U.S. Dist. LEXIS 25988 (N.D. Tex. Aug. 14, 2003); In re Cable & Wireless, PLC, Sec. Litig., 217 F.R.D. 372 (E.D. Va. 2003); Arduini/Messina P'ship. v. Nat'l Med. Fin. Servs. Corp., 74 F. Supp. 2d 352 (S.D.N.Y. 1999); and In re McKesson HBOC, Inc. Sec. Litig., 97 F. Supp. 2d 993 (N.D. Cal. 1999).

[5] Additionally, IEW had purchased 500 shares before the commencement of the Class Period which it held through the class period.

[6] Many courts have held that "in-and-out" purchasers suffer damages by purchasing in an inflated market, even if some of that loss is recouped before the corrective disclosure, and have appointed such persons as class representatives. See, e.g., Welling v. Alexy, 155 F.R.D. 654, 661-63 (N.D. Cal. 1994) (following Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1437 (9th Cir. 1987) and appointing an "in-and-out" purchaser as class representative); In re Scott Paper Co. Sec. Litig., 142 F.R.D. 611, 616 (E.D. Pa. 1992) ("It does not necessarily follow, however, that a plaintiff has recouped all of his or her losses simply because he or she sells stock in the inflated market in which it was bought . . . . Even though Finnan sold [prior to defendants' corrective disclosure] Finnan is still entitled to show that he suffered a loss, as he alleges. No conflict exists between Finnan and the members of the proposed Class."). See also In re Gaming Lottery Sec. Litig., 58 F. Supp. 2d 62, 71 (S.D.N.Y. 1999) ("while the conflict between (continued…)

5

the Court, the erstwhile Tucker Group, on the one hand, and movants Quantum Equities and Frank Whiting, on the other, chose to form a new combination so that "whatever inadequacies one plaintiff may have can be made up by another." (Transcript at 36:14 – 36:15.) The resulting Quantum Equities Group contains both in-and-out purchasers (Quantum, Tucker and Tania R. Tucker Kraus) and a class-period purchaser who held through the Class Period. See Exhibit F to the Quantum Group's memorandum of law dated April 4, 2005.

## CONCLUSION

For the foregoing reasons, movants Quantum Equities Group request that the Court: (i) appoint movants Quantum Equities LLC, Kenneth J. Tucker, Tonia R. Tucker-Kraus, and Michael Kraus as Lead Plaintiffs in the Action; and (ii) approve movants' selection of Milberg Weiss Bershad & Schulman LLP and Wolf Haldenstein Adler Freeman & Herz LLP as Co-Lead Counsel for the Class.

DATED:   April 11, 2005
         New York, New York

Respectfully submitted,

**MILBERG WEISS BERSHAD & SCHULMAN LLP**

By:   /s/  Peter E. Seidman_____
      Steven G. Schulman, Esq. (SS-2561)
      Peter E. Seidman, Esq. (PS-8769)
      Andrei V. Rado, Esq. (AR-3724)
One Pennsylvania Plaza – 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

---

(…continued)

the in-and-out purchaser and other class members is real, it is not sufficiently severe to mark [movant's] claim as atypical or extinguish his ability to serve as an adequate class representative.).

6

**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**


By:  /s/  Fred Taylor Isquith
      Fred Taylor Isquith, Esq. (FI-6782)
      Gustavo Bruckner, Esq. (GB-7701)
      Christopher Hinton, Esq. (CH-0759)
270 Madison Avenue
New York, New York 10016
Telephone:  (212) 545-4600
Facsimile:  (212) 545-4653

**Proposed Co-Lead Counsel**

Louis F. Burke, Esq. (LB-4686)
**LOUIS F. BURKE P.C.**
460 Park Avenue, 21st Floor
New York, NY 10022
Telephone: (212) 682-1700
Facsimile: (212) 808-4280

**Additional Plaintiffs' Counsel**

7

## CERTIFICATE OF SERVICE BY ATTORNEY

I, Peter E. Seidman, a member of the law firm Milberg Weiss Bershad & Schulman LLP, hereby certify that I caused a true and correct copy of the foregoing to be served via U.S. Mail to all parties listed on the attached service list on this 11th day of April 2005.

_____/s/_ _____
Peter E. Seidman

**JAKKS PACIFIC, INC.**
04-CV-8807 (S.D.N.Y.)

**Service List**

*Counsel for Plaintiffs*

Samuel H. Rudman
David A. Rosenfeld
**LERACH, COUGHLIN, STOIA, GELLER,
RUDMAN & ROBBINS, LLP**
200 Broadhollow Road, Ste. 406
Melville, NY 11747
Tel.: (631) 367-7100
Fax: (631) 367-1173

Frederick T. Isquith
Christopher S. Hinton
**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP**
270 Madison Avenue
New York, NY 10016
Tel.: (212) 545-4600
Fax: (212) 545-4653

Louis F. Burke
**LOUIS F. BURKE P.C.**
460 Park Avenue, 21st Floor
New York, NY 10022
Tel.: (212) 682-7200
Fax: (212) 808-4280

Ken H. Chang
Marian P. Rosner
Michael Adam Schwartz
**WOLF POPPER LLP**
845 Third Avenue
New York, NY 10022
Tel.: (212) 451-9667
Fax: (212) 486-2093

Marc A. Topaz
Richard A. Maniskas
**SCHIFFRIN & BARROWAY**
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
Tel.: (610) 667-7706
Fax: (610) 667-7056

Eric James Belfi
**MURRAY, FRANK & SAILER, LLP**
275 Madison Avenue, Ste. 801
New York, NY 10016
Tel.: (212) 682-1818
Fax: (212) 682-1892

Alfred G. Yates, Jr.
Gerald L. Rutledge
**LAW OFFICE OF ALFRED G. YATES JR.**
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219
Tel.: (412) 391-5164
Fax: (412) 471-1033

Richard B. Brualdi
**The Brualdi Law Firm**
29 Broadway, Suite 2400
New York, NY 10006
Tel.: (212) 952-0602
Fax: (212) 952-0608

Andrew M. Schatz
Jeffrey S. Nobel
William Bernarduci
Justin S. Kudler
Nancy A. Kulesa
**SCHATZ & NOBEL, P.C.**
One Corporate Center
20 Church Street, Suite 1700
Hartford, Connecticut 06103
Tel.: (860) 493-6292
Fax: (860) 493-6290


*Counsel for Defendants*

John R. Williams
**SCHWEITZER CORNMAN GROSS & BONDELL LLP**
292 Madison Avenue
New York, NY 10017
Tel.: (646) 424-0770
Fax: (646) 424-0880

Michael H. Gruenglas
**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**
Four Times Square
New York, NY 10036
Tel.: (212) 735-3000
Fax: (212) 735-2000

Isaac S. Greaney
**SIDLEY AUSTIN BROWN & WOOD**
787 7th Avenue, 22nd Floor
New York, NY 10019
Tel.: (212) 906-2000
Fax: (212) 839-5599