UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
IN RE JAKKS PACIFIC, INC.
SHAREHOLDERS CLASS ACTION     :       Civil Action No. 04-CV-8807 (RJS)
LITIGATION

                                   :           (ECF Case)

                                   :      Electronically Filed

                                   :

--------------------------------------------------------x

## DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS
## THE SECOND AMENDED CONSOLIDATED COMPLAINT

FEDER, KASZOVITZ, ISAACSON, WEBER,
  SKALA, BASS & RHINE LLP
Murray L. Skala (MS-9354)
Jonathan D. Honig (JH-7577)
750 Lexington Avenue
New York, New York 10022
Phone:  (212) 888-8200
Fax:  (212) 888-5968

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
Jonathan J. Lerner (JL-7117)
Michael H. Gruenglas (MG-8705)
Maura B. Grinalds (MG-2836)
Robert A. Fumerton (RF-3556)
Four Times Square
New York, New York  10036
Phone:  (212) 735-3000
Fax:  (212) 735-2000

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................ii

PRELIMINARY STATEMENT .............................................................................................1

I.   PLAINTIFFS HAVE FAILED TO ALLEGE LOSS CAUSATION................................2

    A.   The Dismissal Order Forecloses Plaintiffs' Contention That They Need Not Allege the Stock Price Drop Was Caused by the Disclosure of the Alleged Bribery Scheme ........................................................................................2

    B.   Second Circuit Authority Demolishes Plaintiffs' Argument that It Is Unnecessary to Distinguish Between the Effect of the Disclosure of the Alleged Bribery Scheme and the Disclosure of the Litigation and Other Non-Actionable Adverse Information .................................................................5

    C.   None of the Authority Cited By Plaintiffs Even Involves Mixed Disclosures ........................................................................................................7

    D.   Defendants Are Not Arguing that Plaintiffs Are Required to Satisfy Any Heightened Pleading Standard with Respect to Loss Causation ...........................9

II.  THE ALLEGED BRIBERY SCHEME WAS IMMATERIAL ........................................9

    A.   Defendants Are Not Applying a Hindsight Analysis to Materiality......................9

    B.   JAKKS' Press Release Does Not Render the Alleged Bribery Scheme Material ..............................................................................................................10

    C.   JAKKS' Identification of the WWE Action as a Pending Legal Proceeding In Its SEC Filings Does Not Render the Alleged Bribery Scheme Material ........11

    D.   As a Matter of Law, the Potential Renewal of the Licenses in 2009 Was Too Speculative to be Material..........................................................................12

    E.   A Company Has No Duty to Disclose Mismanagement or General Bad Acts ....................................................................................................................13

III. PLAINTIFFS STILL FAIL TO SATISFY RULE 9(B) AND THE PSLRA .................14

CONCLUSION ...................................................................................................................15

## TABLE OF AUTHORITIES

### CASES

In re AOL Time Warner, Inc. Securities Litigation,
   503 F. Supp. 2d 666 (S.D.N.Y. 2007) ........................................................................ 6

In re AXIS Capital Holdings Ltd. Securities Litigation,
   456 F. Supp. 2d 576 (S.D.N.Y. 2006) ................................................................. 12, 13

In re Alcatel Securities Litigation,
   382 F. Supp. 2d 513 (S.D.N.Y. 2005) ...................................................................... 15

Ciresi v. Citicorp,
   782 F. Supp. 819 (S.D.N.Y. 1991), aff'd mem.,
   956 F.2d 1161 (2d Cir. 1992) ............................................................................. 10, 14

Danis v. USN Communications, Inc.,
   73 F. Supp. 2d 923 (N.D. Ill. 1999) .......................................................................... 8

Denny v. Barber,
   576 F.2d 465 (2d Cir. 1978) ..................................................................................... 11

Dura Pharmaceuticals, Inc. v. Broudo,
   544 U.S. 336 (2005) ...................................................................................... 3, 5, 8, 9

In re ICG Communications, Inc. Securities Litigation,
   No. 00-RB-1864, 2006 U.S. Dist. LEXIS 6695 (D. Colo. Feb. 7, 2006) .................... 8

Kalin v. Xanboo, Inc.,
   526 F. Supp. 2d 392 (S.D.N.Y. 2007) ........................................................................ 4

Klein v. General Nutrition Cos.,
   186 F.3d 338 (3d Cir. 1999) ..................................................................................... 13

Lattanzio v. Deloitte & Touche LLP,
   476 F.3d 147 (2d Cir. 2007) ....................................................................................... 6

Lentell v. Merrill Lynch & Co.,
   396 F.3d 161 (2d Cir. 2005) ....................................................................................... 3

Levine v. NL Industries, Inc.,
   720 F. Supp. 305 (S.D.N.Y.1989), aff'd, 926 F.2d 199 (2d Cir. 1991) ..................... 11

In re Marsh & McLennan Cos. Securities Litigation,
    501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................................................ 13

In re Merrill Lynch & Co. Research Reports Securities Litigation,
    No. 02 MDL 1484, 2008 WL 2019680 (S.D.N.Y. May 8, 2008) ........................ 2, 5, 6

In re Omnicom Group, Inc. Securities Litigation
    541 F. Supp. 2d at 546 (S.D.N.Y. 2008) ..................................................................... 7

In re Par Pharmaceutical, Inc. Securities Litigation,
    733 F. Supp. 668 (S.D.N.Y. 1990) ........................................................................... 13

Quach v. Cross,
    No. CV0309627GAFRZX, 2004 WL 2860346 (C.D. Cal. June 10, 2004),
    aff'd, 252 F. App'x 775 (9th Cir. 2007) .................................................................... 15

In re Rhodia S.A. Securities Litigation,
    531 F. Supp. 2d 527 (S.D.N.Y. 2007) .................................................................... 7, 8

Roeder v. Alpha Industries, Inc.,
    814 F.2d 22 (1st Cir. 1987) ...................................................................................... 14

Schleicher v. Wendt,
    529 F. Supp. 2d 959 (S.D. Ind. 2007) ........................................................................ 8

Teachers' Retirement System v. Hunter,
    477 F.3d 162 (4th Cir. 2007) ...................................................................................... 9

Teamsters Local 445 v. Dynex Capital, Inc.,
    No. 06-2902-cv, 2008 U.S. App. LEXIS 13449 (2d Cir. June 26, 2008) ................... 14

## STATUTES

17 C.F.R. § 229.103 (2008) ........................................................................................ 12

Fed. R. Civ. P. 9(b) ............................................................................................. 2, 9, 15

<u>**PRELIMINARY STATEMENT**</u>

Faced with the controlling Second Circuit authority holding that Section 10(b) plaintiffs must plead "loss causation" by alleging facts demonstrating that their loss was caused by the disclosure of the alleged fraud – and not by other non-actionable negative information – Plaintiffs' Opposition Brief simply ignores Judge Karas' explicit holdings that Defendants were under no legal duty to disclose the threat of civil litigation by World Wrestling Entertainment, Inc. ("WWE").  (<u>See</u> Dismissal Order at 20-21.)  On its face, the Second Amended Consolidated Complaint (the "SAC") does not contain a <u>single</u> factual allegation that any of Plaintiffs' losses were caused by the disclosure of the alleged bribery scheme, as opposed to the disclosure of the WWE litigation, which is fatal to Plaintiffs' attempt to plead loss causation.

By conflating the disclosure of the bribery allegations with the disclosure of the non-actionable WWE litigation, not only are Plaintiffs flouting the explicit holdings of the Dismissal Order, they are disregarding their own allegations in the SAC, which demonstrate that JAKKS' stock price began precipitously declining after JAKKS disclosed that litigation may be imminent – <u>before any disclosure of the underlying bribery allegations</u>.  These allegations, which must be taken as true, irrefutably demonstrate that the disclosure of the non-actionable litigation – independent of any disclosure of the underlying bribery allegations – caused JAKKS' stock price to decline.  Indeed, the SAC explicitly alleges that the bribery allegations were not disclosed until "later that same day" when news reports <u>simultaneously disclosed the actual filing of the litigation</u>.  (SAC ¶ 91.)

Given their own allegations, Plaintiffs are forced to argue – without <u>any</u> authority – that they have no obligation to allege that their loss was caused by the disclosure of the alleged fraud as opposed to the disclosure of the non-actionable litigation.  In doing so, Plaintiffs barely address the controlling Second Circuit authority cited by Defendants.  Tellingly, Plaintiffs

1

relegate to a footnote Judge Keenan's recent decision in <u>In re Merrill Lynch & Co. Research Reports Securities Litigation</u>, No. 02 MDL 1484, 2008 WL 2019680 (S.D.N.Y. May 8, 2008), which is directly on point here, and fail to even address – much less distinguish – the explicit holding that the <u>Merrill Lynch</u> plaintiff failed to allege loss causation because "the Complaint does not account for the fact that the [corrective disclosure] contained other 'bad news,' apart from the concern about [the alleged fraud], that was likely to cause a drop in the company's share price." <u>Id.</u> at *14.  This holding applies with even greater force to the "mixed disclosure" relied upon by Plaintiffs here because it was not just "likely" that the non-actionable disclosure of the WWE litigation caused a drop in JAKKS' stock price – <u>Plaintiffs have explicitly alleged that JAKKS' initial disclosure of the litigation caused JAKKS' stock price to decline 22%, before any mention of the underlying bribery allegations</u>.  (Def. Mem. at 13-14 (citing SAC ¶ 89).)

The SAC should also be dismissed for the following two separate and independent reasons:

- Given the judicial determination that WWE had no viable claim and thus there was never any threat to the continued viability of the licenses, Plaintiffs also fail to offer a coherent legal theory as to how the alleged bribery scheme could have been material during the class period.  (<u>See</u> <u>infra</u> at § II.)

- Plaintiffs have failed to cure their Rule 9(b) and PSLRA defects.  (<u>See</u> <u>infra</u> at § III.)

## I.    <u>PLAINTIFFS HAVE FAILED TO ALLEGE LOSS CAUSATION</u>

### A.    <u>The Dismissal Order Forecloses Plaintiffs' Contention That They Need Not Allege the Stock Price Drop Was Caused by the Disclosure of the Alleged Bribery Scheme</u>

Defendants established that Plaintiffs have not adequately alleged loss causation because the SAC fails to allege a single fact demonstrating that <u>any</u> of Plaintiffs' purported loss was caused by the disclosure of the alleged bribery scheme as opposed to the disclosure of the non-actionable WWE litigation.  (Def. Mem. at 14-19.)  In their Opposition Brief, Plaintiffs argue that "because the corrective disclosures issued on October 19 clearly informed investors that the

2

WWE Action was the result of an alleged bribery scheme, <u>it is unnecessary to parse the effect of the disclosure of the filing of the WWE Action from the effect of the disclosure of the bribery scheme itself</u>." (Pl. Mem. at 19 (emphasis added); <u>see also</u> <u>id.</u> at 19 n.12.)

In advancing this argument, Plaintiffs are forced to pretend that Judge Karas did not explicitly hold that Defendants were under no duty to disclose the threat of WWE litigation. While Plaintiffs now disingenuously disavow their previous position, asserting they "have never contended that Defendants were required to disclose the WWE Action" (Pl. Mem. at 3), Judge Karas explicitly stated that "<u>Plaintiffs also base their fraud claims on Defendants' alleged failure to disclose the threat of litigation initiated by WWE</u>." (Dismissal Order at 20 (emphasis added).) Indeed, Judge Karas squarely rejected Plaintiffs' argument, holding that "a company has no general obligation to disclose the risk of litigation unless that litigation is 'substantially certain to occur,'" and that "Plaintiffs do not plead sufficient facts from which to conclude that Defendants knew that litigation was 'substantially certain to occur.'" (<u>Id.</u> at 20-21.)

These explicit holdings – coupled with the controlling Second Circuit authority described in Defendants' Opening Brief (<u>see</u> Def. Mem. at 15-19) – are fatal to Plaintiffs' attempt to plead loss causation. Given the unequivocal judicial determination that Defendants were under no duty to disclose the threat of litigation initiated by WWE, Plaintiffs cannot allege loss causation based on the disclosure of such litigation because <u>Plaintiffs cannot recover for any stock price drop attributable to information Defendants were under no duty to disclose</u>. <u>See, e.g.</u>, <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 342-44 (2005); <u>Lentell v. Merrill Lynch & Co.</u>, 396 F.3d 161, 172 (2d Cir. 2005).

Contrary to Plaintiffs' contention in their Opposition Brief, <u>Defendants</u> did not manufacture the distinction between the disclosure of the alleged bribery scheme and the

disclosure of the WWE litigation; rather, it is established by Judge Karas' unequivocal holding that, under well-settled law, Defendants were under no duty to disclose the threat of the WWE litigation.  While Plaintiffs purport to rely on the so-called "law of the case" doctrine elsewhere in their brief – see, e.g., Pl. Mem. at 29 ("[Judge Karas'] ruling on [the materiality] issue is now the law of the case and should not be disturbed") – this explicit holding is conspicuously absent from their discussion of loss causation.

Plaintiffs' attempt to conflate the disclosure of the alleged bribery scheme with the non-actionable disclosure of the WWE litigation is also belied by the SAC itself, which alleges that JAKKS' stock price began its decline after JAKKS' disclosure that litigation may be imminent – before any disclosure of the underlying bribery allegations.  (Def. Mem. at 2, 13, 16 (citing SAC ¶ 88).)[1]  These allegations, which must be taken as true, eliminate any doubt that the non-actionable disclosure of the litigation – independent of the alleged bribery allegations – negatively affected JAKKS' stock price.  Indeed, as the SAC concedes, the underlying bribery allegations were not disclosed until "later that same day" when news reports[2] indicated that the complaint had actually been filed.  (Def. Mem. at 2, 13, 16 (citing SAC ¶ 91).)[3]

---

[1]  Plaintiffs argue that "[i]n that press release, JAKKS disclosed that WWE had 'raised questions about the validity of the licenses' between WWE and JAKKS and disclosed that JAKKS had to defend itself against charges of 'wrongdoing' in connection with the acquisition and/or renewal of those Licenses."  (Pl. Mem. at 16.)  Plaintiffs do not dispute, however, that this disclosure about potential litigation made no mention whatsoever of the underlying bribery allegations.

[2]  Plaintiffs attach three examples of these news reports as Exhibits B-D to the Declaration of Matthew A. Kupillas filed in support of their opposition to Defendants' Motion.  Plaintiffs' attempt to introduce these news reports (and other evidence) in their opposition brief is plainly improper and must be ignored.  See, e.g., Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 398 (S.D.N.Y. 2007) (refusing to consider new evidence introduced in plaintiff's memorandum of law in opposition to a motion to dismiss).  In any event, these news reports only serve to underscore Plaintiffs' failure and inability to allege loss causation because each of these "later that same day" news reports simultaneously disclosed the actual filing of the WWE litigation while disclosing the bribery allegations.  (See supra at § I.A.)

[3]  In an effort to obfuscate their inability to plead loss causation, Plaintiffs mischaracterize Defendants' loss causation argument, contending that Defendants took the position that "the disclosures released to the public on October 19, 2004 did not disclose the existence of the alleged commercial bribery scheme, but instead only

*(cont'd)*

4

**B.    Second Circuit Authority Demolishes Plaintiffs' Argument that It Is Unnecessary to Distinguish Between the Effect of the Disclosure of the Alleged Bribery Scheme and the Disclosure of the Litigation and Other Non-Actionable Adverse Information**

Under <u>Dura</u>, courts within the Second Circuit routinely dismiss complaints where, as here, plaintiffs fail to plead facts demonstrating that their losses were caused by the specific disclosure of the alleged fraud and not by any other factors.  (<u>See</u> Def. Mem. at 14-19.)  Plaintiffs barely address – much less distinguish – this authority cited by Defendants.  It speaks volumes that Plaintiffs even fail to distinguish the recent decision in <u>Merrill Lynch</u>, in which Judge Keenan dismissed a complaint similar to the SAC where, as here, plaintiff tried to plead loss causation by alleging a "mixed disclosure" of the alleged fraud and other non-actionable adverse information. In language equally applicable here, the Court held that "the Complaint does not account for the fact that <u>the October 4, 2000 report contained other 'bad news,' apart from the concern about [the alleged fraud], that was likely to cause a drop in the company's share price</u>."  2008 WL 2019680, at *14 (emphasis added).  Relying on established Second Circuit precedent, Judge Keenan thus held that plaintiff's "attempt to plead loss causation fails because he <u>has not alleged facts that lead to the inference that all, or even some, of his losses are due to the alleged fraud, rather than to intervening events and/or to the disclosure of other information</u>." <u>Id.</u> (emphasis added).

The <u>only</u> mention of this case in Plaintiffs' 31-page opposition brief is buried in a footnote, (Pl. Mem. at 21 n.13), and Plaintiffs fail even to address – much less distinguish – the relevant holding concerning the "mixed disclosure" of the alleged fraud and other non-actionable adverse information.  Rather, Plaintiffs resort to a complete "red herring," arguing that the

_____

*(cont'd from previous page)*
disclosed the possibility that WWE would file a lawsuit against JAKKS."  (Pl. Mem. at 14.)  Defendants made no such argument.  Rather, Defendants demonstrated that the SAC alleges that JAKKS' stock price began its decline after the disclosure of the threat of litigation – absent any disclosure about allegations of bribery – and that the bribery allegations were then subsequently disclosed simultaneously with the disclosure of the commencement of the WWE litigation.

Merrill Lynch Court noted two additional and independent loss causation defects which are not

present here.[4]  But Judge Keenan's reference to additional and independent defects in plaintiff's

attempt to plead loss causation does nothing to undercut the Court's holding that plaintiff failed

to plead loss causation by virtue of his failure to account for the fact that the corrective

disclosure "contained other 'bad news,' apart from the concern about [the alleged fraud], that was

likely to cause a drop in the company's share price."  Merrill Lynch, 2008 WL 2019680 at *14.

Here, the SAC explicitly alleges that the "other bad news" in this case – the WWE litigation –

caused JAKKS' stock price to decline 22% before there was any disclosure of the underlying

bribery allegations, and thus there can be no doubt that this other non-actionable adverse

information negatively affected the stock price.  (Def. Mem. at 13-14 (citing SAC ¶ 89).)

Similarly unavailing is Plaintiffs' half-hearted attempt to distinguish Lattanzio v. Deloitte

& Touche LLP, 476 F.3d 147 (2d Cir. 2007) and In re AOL Time Warner, Inc. Securities

Litigation, 503 F. Supp. 2d 666 (S.D.N.Y. 2007), by contending that "[i]n each of those cases,

the court ruled that because there were numerous misleading statements made by other

defendants, including misstatements that were 'more consequential and numerous' than the

allegedly false statement made by the specific defendant at issue, the complaint did not allege

facts 'that would allow a factfinder to ascribe some rough proportion of the whole loss to [the

---

[4]  First, Plaintiffs contend that "in Merrill Lynch, the company had experienced a long, protracted stock price decline which coincided with a 'market-wide collapse of Internet stocks'; the court found that such a market-wide collapse could have been an 'intervening event' that caused investors' losses, and the plaintiffs' failure to even address that market-wide decline severely undercut their loss causation allegations."  (Pl. Mem. at 21 n.13.)  Plaintiffs also argue that "in Merrill Lynch, the court found that certain allegedly concealed risks had been properly disclosed by the defendants while other risks remained undisclosed, and the complaint failed to allege that the revelation of a previously-concealed liquidity crisis was the result of the undisclosed risks rather than the disclosed risks."  (Id.)  These purported "distinctions," which do not in any way address Judge Keenan's holding concerning the "mixed disclosure," only further underscore the well-settled principle that loss causation can only be alleged by demonstrating that the stock price drop was caused by the revelation of information correcting a prior actionable misstatement or omission.  (See supra at § I.B.)

specific defendant's] misstatements.'"  (Pl. Mem. at 21 n.13.)  Plaintiffs vainly try to distinguish these cases by arguing that the alleged misstatements here were all attributable to JAKKS.  (Id.)[5]

This is yet another distinction without a difference.  Under this controlling Second Circuit authority, plaintiffs must allege facts demonstrating that the loss for which they seek to recover was caused by the revelation of the alleged fraud <u>as opposed to the disclosure of other non-actionable adverse information</u>.  Here, Plaintiffs do not dispute that (i) adverse news affecting the JAKKS stock price was simultaneously released to the market (<u>i.e.</u>, the WWE litigation) and (ii) there has been a judicial determination that Defendants were under no prior duty to disclose such information.  Accordingly, Plaintiffs' failure to allege facts demonstrating that the decline in JAKKS' stock price was caused by the disclosure of the alleged bribery scheme as opposed to the other non-actionable adverse news is fatal to their Section 10(b) claim.

## C.    <u>None of the Authority Cited By Plaintiffs Even Involves Mixed Disclosures</u>

None of the cases cited by Plaintiffs for the proposition that "the loss causation allegations in this case fit the 'classic' fact pattern in securities fraud litigation" (Pl. Mem. at 13), involve "mixed disclosures" at all.  Nor do they challenge the well-established principle that plaintiffs must allege facts demonstrating that their loss was caused by the revelation of the alleged fraud and not by any other factors.  In the only case from within the Second Circuit cited by Plaintiffs, <u>In re Rhodia S.A. Securities Litigation</u>, 531 F. Supp. 2d 527 (S.D.N.Y. 2007), the

---

[5]  Finally, Plaintiffs argue that <u>In re Omnicom Group, Inc. Securities Litigation</u>, 541 F. Supp. 2d 546 (S.D.N.Y. 2008) is inapposite because the case was decided on summary judgment.  (Pl. Mem. at 20-21.)  But <u>Omnicom</u> only underscores Plaintiffs' inability to plead – much less prove – loss causation.  In <u>Omnicom</u>, the Court held that "[t]o prove loss causation, plaintiffs must distinguish the alleged fraud from the tangle of [other] factors that affect a stock's price." 541 F. Supp. 2d at 553.  The Court granted summary judgment to defendants because plaintiffs could not "demonstrate that the market reacted negatively to the disclosures, <u>rather than to other information simultaneously released to the market</u>." <u>Id.</u>  Here, Defendants have not even <u>alleged</u> a single fact anywhere in their verbose pleading demonstrating that their purported loss was caused by the disclosure of the alleged bribery scheme as opposed to the disclosure of the non-actionable WWE litigation.

district court <u>dismissed</u> the securities class action for failure to plead loss causation, stating that "courts in this District have further refined the public disclosure analysis, concluding that the loss causation requirement is satisfied <u>only if the public disclosure causing injury addressed the specific fact allegedly concealed</u>." <u>Id.</u> at 545 (emphasis added).

Plaintiffs then resort to citing <u>Danis v. USN Communications, Inc.</u>, 73 F. Supp. 2d 923, 943 (N.D. Ill. 1999), a pre-<u>Dura</u> case where the court held that plaintiffs need only demonstrate purchase-price inflation to allege loss causation. Plainly, this holding has been overruled by <u>Dura</u>, which held that a plaintiff could <u>not</u> plead loss causation by merely alleging purchase-price inflation. (Def. Mem. at 14-15.) In any event, <u>Danis</u> was a "leakage" case where plaintiffs alleged that the stock price slowly declined over time as information was revealed to the market, and did not even involve an attempt by plaintiffs to plead a corrective disclosure.[6]

Finally, <u>In re ICG Communications, Inc. Securities Litigation</u>, No. 00-RB-1864, 2006 U.S. Dist. LEXIS 6695 (D. Colo. Feb. 7, 2006), is inapposite because plaintiffs alleged corrective disclosures revealing the truth of the prior misstatements which caused the stock price to decline and <u>such disclosures contained no other adverse information that could have affected the stock price</u>.[7] <u>See id.</u> at *21-22. Here, Plaintiffs concede that the disclosure of the bribery allegations was coupled with the simultaneous disclosure of the commencement of the WWE litigation – information which Defendants were under no duty to disclose and which Plaintiffs

---

[6] Similarly, <u>Schleicher v. Wendt</u>, 529 F. Supp. 2d 959 (S.D. Ind. 2007) (Pl. Mem. at 13 n.7) was a "materialization of risk" case that did not involve corrective disclosures at all. In <u>Schleicher</u>, the court held that plaintiff adequately alleged that "the materialization of risks that were not disclosed caused a decline in the value of the stock in the slide toward bankruptcy." <u>Id.</u> at 967-68.

[7] Plaintiffs also contend that "the law does not require a single 'mirror image' disclosure that reveals all aspects of the alleged fraud in order to adequately allege loss causation," and cite a string of cases for this unremarkable proposition. (Pl. Mem. at 16 n.10.) None of the authority cited by Plaintiffs involves a "mixed disclosure," however, much less a judicial determination that a single disclosure contained information relating to both actionable and non-actionable statements.

affirmatively allege negatively affected JAKKS' stock price.  (See supra at § I.A.)

**D.    Defendants Are Not Arguing that Plaintiffs Are Required to Satisfy Any Heightened Pleading Standard with Respect to Loss Causation**

Finally, Plaintiffs contend that "Defendants appear to be arguing that Plaintiffs are required to meet a higher standard for pleading loss causation than the Rule 8 standard confirmed in Dura." (Pl. Mem. at 20; see also Pl. Mem. at 15 n.9.)  As a threshold matter, the Supreme Court in Dura did not, as Plaintiffs represent, confirm that Rule 8 applies to allegations of loss causation.  On the contrary, the Supreme Court explicitly eschewed any ruling on that unsettled issue, stating only that "we assume, at least for argument's sake, that neither the Rules nor the securities statutes impose any special further requirement in respect to the pleading of proximate causation or economic loss." Dura, 544 U.S. at 346 (emphasis added).[8]  In any event, Defendants are not contending that any heightened pleading standard applies to allegations of loss causation.  Under any pleading standard, Plaintiffs have failed to allege any facts demonstrating that the decline in JAKKS' stock price was caused by the disclosure of the alleged bribery scheme, as opposed to the disclosure of the WWE litigation or any other factors.  Accordingly, the SAC should be dismissed based on Plaintiffs' failure to plead loss causation.

**II.    THE ALLEGED BRIBERY SCHEME WAS IMMATERIAL**

**A.    Defendants Are Not Applying a Hindsight Analysis to Materiality**

In their opening brief, Defendants established that the alleged bribery scheme was immaterial as a matter of law because (i) Judge Karas held that the only material aspect of the

---

[8]  As several courts have noted, it is an unsettled question of law as to whether Rule 9(b) applies to allegations of loss causation, and courts have suggested that there is a strong argument that it should.  See, e.g., Teachers' Ret. Sys. v. Hunter, 477 F.3d 162, 185-86 (4th Cir. 2007) ("Neither the PSLRA nor the Supreme Court has established whether loss causation is a sufficient part of an 'averment of fraud' to fall within the requirements of Federal Rule of Civil Procedure 9(b).  A strong case can be made that because loss causation is among the 'circumstances constituting fraud for which Rule 9(b) demands particularity, loss causation should be pleaded with particularity.'").

scheme was that "Jakks's own public statements make clear that the WWE licenses generated, and were expected to continue to generate, significant revenue for the company" and thus "[a]n investor might reasonably want to know if that <u>source of revenue was threatened</u> because it was improperly or illegally derived" (Dismissal Order at 10 (emphasis added)), and (ii) it has now been <u>judicially determined there was no actual threat to the continued viability of the licenses</u>. (Def. Mem. at 20-22.)  Plaintiffs contend that "Defendants are improperly seeking to assess the materiality of the concealed bribery scheme through the lens of hindsight" and that "despite Defendants' confidence in JAKKS' defenses, it was far from certain during the Class Period . . . that WWE would fail in its challenge to the validity of the Licenses."  (Pl. Mem. at 24.)

      This argument is unavailing.  <u>At the time</u> of the alleged misstatements there was either a legally viable challenge to the licenses or there was not.  It has been judicially determined <u>there was no legally viable challenge to the licenses</u> because the Court held that (i) WWE's claims were time-barred, and (ii) WWE never suffered an ascertainable injury.  (<u>See</u> Def. Mem. at 19-22.)  Thus, as a matter of law, the alleged bribery scheme was immaterial.  Applying Plaintiffs' reasoning, companies would be under an almost constant duty to disclose potential frivolous and otherwise meritless claims that could be leveled against them.  Such a position is directly contradicted by well-settled law and the holdings in the Dismissal Order.  (<u>See</u> Dismissal Order at 14 ("'[T]he law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement.'") (quoting <u>Ciresi v. Citicorp</u>, 782 F. Supp. 819, 823 (S.D.N.Y. 1991).)[9]

## B.    <u>JAKKS' Press Release Does Not Render the Alleged Bribery Scheme Material</u>

      Plaintiffs also argue that "[a]lthough JAKKS immediately denied [sic] [in their October

---

[9] Further, none of the cases cited by Plaintiffs for the unremarkable proposition that "'materiality is determined in light of the circumstances existing at the time the alleged misstatement occurred'" (Pl. Mem. at 24), even remotely address the materiality of the threat of time-barred or meritless challenges to a source of revenue.

19, 2004 press release] that the WWE Action was without merit, JAKKS did not provide investors with any specific facts to inform them why the WWE Action was purportedly without merit." (Pl. Mem. at 25.) Plaintiffs further argue that "[i]n the absence of any such information, investors did not simply accept JAKKS' response as the gospel truth, but remained concerned that the WWE Action would cause JAKKS to lose revenues from the Licenses." (Id.)

Plaintiffs' challenge to Defendants' October 19, 2004 press release as misleading fails as a matter of law because such release was not issued until the last day of the class period. The only plaintiffs with standing to challenge a misstatement are those that purchased the security following such statement.[10] Further, any information that JAKKS failed to disclose on the last day of the class period cannot retroactively affect the materiality of its alleged omissions during the class period because, as Plaintiffs point out elsewhere, "'materiality is determined in light of the circumstances existing at the time the alleged misstatement occurred.'" (Pl. Mem. at 24.)

## C.  JAKKS' Identification of the WWE Action as a Pending Legal Proceeding In Its SEC Filings Does Not Render the Alleged Bribery Scheme Material

In a hopelessly confused argument, Plaintiffs contend that the alleged bribery scheme was material because "JAKKS itself identified the WWE Action as a 'material' lawsuit, and stated that the outcome of that lawsuit was uncertain, in its own SEC filings." (Pl. Mem. at 25.) Of course, the materiality of the litigation itself – once filed (and once a claim for damages, however speculative or frivolous, had been made) – has absolutely no bearing on whether the alleged bribery scheme was material during the putative class period. Defendants disclosed the WWE litigation as soon as it was filed and Judge Karas already held that they were under no

---

[10]  See, e.g., Levine v. NL Indus., Inc., 720 F. Supp. 305, 308 (S.D.N.Y. 1989) (plaintiff had no standing to challenge statements made after stock purchases), aff'd, 926 F.2d 199 (2d Cir. 1991); accord Denny v. Barber, 576 F.2d 465, 468-69 (2d Cir. 1978) (same).

prior duty to disclose the threat of such litigation.  (See supra at § I.A.)  Companies are under an

obligation to report the filing of even the most frivolous litigation under 17 C.F.R. § 229.103,

provided that the amounts in dispute are above a certain threshold level.[11]  JAKKS' compliance

with this basic SEC disclosure requirement obviously has no bearing whatsoever on whether the

alleged bribery scheme was material during the class period.

**D.    As a Matter of Law, the Potential Renewal of the
       Licenses in 2009 Was Too Speculative to be Material**

In response to Defendants' argument that the potential renewal of the licenses in 2009

(SAC ¶ 72) – more than ten years after the beginning of Plaintiffs' class period – was too

speculative to be material, Plaintiffs argue that "while it may have been speculative to assume

that WWE would have been willing to renew its Licenses with JAKKS in the absence of the

bribery scheme, it was almost certain that, once WWE was aware of the bribery scheme, WWE

would be unwilling to do any further business with JAKKS." (Pl. Mem. at 28.)  In other words,

while Plaintiffs concede that absent the alleged bribery scheme, the potential renewal would have

been speculative – and immaterial as a matter of law – Plaintiffs are arguing that the possibility

of renewal became material once it was "almost certain" that the licenses would not be renewed.

Not surprisingly, Plaintiffs fail to cite any authority for this internally inconsistent proposition.

Indeed, Plaintiffs do not even address – much less distinguish – three of the four cases

Defendants cited in support of the well-settled principle that speculative or contingent events are

immaterial as a matter of law.  (See Def. Mem. at 23 (citing In re AXIS Capital Holdings Ltd.

Sec. Litig., 456 F. Supp. 2d 576, 586 (S.D.N.Y. 2006) ("[D]efendants were under no duty to

---

[11]  See 17 C.F.R. § 229.103 (2008) (Item 103 of Regulation S-K) ("Describe briefly any material pending legal
proceedings, other than ordinary routine litigation incidental to the business, to which the registrant or any of its
subsidiaries is a party or of which any of their property is the subject.").

disclose the risk that contingent commission agreements might be discontinued."); accord In re Marsh & McLennan Cos. Sec. Litig., 501 F. Supp. 2d 452, 471 (S.D.N.Y. 2006); Klein v. Gen. Nutrition Cos., 186 F.3d 338, 342-43 (3d Cir. 1999).)

In re Par Pharmaceutical, Inc. Securities Litigation, 733 F. Supp. 668 (S.D.N.Y. 1990), held that "Defendants cannot be held liable for failing to 'disclose' what would have been pure speculation." Id. at 678. Plaintiffs' attempt to distinguish Par – the only case they even address – only further demonstrates that the JAKKS Defendants were under no duty to speculate as to whether WWE would renew the licenses. (Pl. Mem. at 28 n.18.) In Par, as Plaintiffs themselves explain, the Court distinguished the bribery scheme itself from its "potential effects" because "'the company was not obligated to speculate as to the myriad of consequences, ranging from minor setbacks to complete ruin, that might have befallen the company if the bribery scheme was discovered, disclosed or terminated.'" (Id. (quoting Par, 733 F. Supp. at 678).) Here, as in Par, Defendants were under no duty to speculate as to the "potential effects" of the alleged bribery scheme on contingent events such as the potential renewal of the licenses in 2009, and thus this potential renewal cannot form the basis of Plaintiffs' materiality theory.[12]

## E.     A Company Has No Duty to Disclose Mismanagement or General Bad Acts

In a last-ditch effort to find some legally-cognizable materiality theory, Plaintiffs argue that corporate bribery is relevant to the competency of management and is thus per se material. (Pl. Mem. at 29.) But Judge Karas necessarily rejected this argument by holding that any statements not "specifically" related to the acquisition of the licenses were not actionable – information

---

[12]  Even more attenuated is Plaintiffs' contention that the alleged bribery scheme was material because "JAKKS might lose future business from companies other than WWE as a result of the bribery scheme." (Pl. Mem. at 29.) The possibility that JAKKS might lose future business from other companies due to an alleged bribery scheme is even more speculative than the potential renewal of the licenses by WWE and, a fortiori, also fails under Par and the other well-settled authority described above. (See supra at § II.D.)

relating to the general competency of management obviously has no bearing on the narrow category of acquisition-related statements. (Dismissal Order at 12.) Indeed, in finding that Plaintiffs could <u>not</u> state a claim based upon "general statements about Jakks's success and Jakks's products" – which relate to the competency of management – Judge Karas held:

> As such, these general statements about Jakks's corporate model or its overall success do not trigger a duty to reveal all potentially damaging information such as that alleged here. <u>Indeed, if such unspecific statements of corporate well-being gave rise to a duty to disclose the alleged bribery scheme here, courts would find a duty in virtually every case where the defendant is alleged to have engaged in illegal activity. This is not the law.</u>

(<u>Id.</u> at 14 (emphasis added) (citing <u>Ciresi</u>, 782 F. Supp. at 823) ("[T]he law does not impose a duty to disclose uncharged, unadjudicated wrongdoing or mismanagement").)[13]

Accordingly, Plaintiffs' attempt to ignore Judge Karas' Dismissal Order yet again should be rejected and the SAC should be dismissed for the additional and independent reason that the alleged bribery scheme was immaterial as a matter of law.[14]

## III.    PLAINTIFFS STILL FAIL TO SATISFY RULE 9(B) AND THE PSLRA

Plaintiffs argue that "the only pleading defect in the CAC identified by the Court in its Order was that the CAC failed to <u>separately</u> set forth, for each public statement that is alleged to

---

[13]  Plaintiffs conveniently ignore this passage of the Dismissal Order in arguing that information relating to general mismanagement is <u>per se</u> material. (Pl. Mem. at 29.) In <u>Roeder v. Alpha Industries, Inc.</u>, 814 F.2d 22, 25-26 (1st Cir. 1987), upon which Plaintiffs rely for this misguided proposition, the First Circuit affirmed the dismissal of a securities fraud complaint for failure to allege facts that, if proved, would establish that the corporation had a duty to disclose alleged illegal payments. While the court stated in dicta that based on the specific facts alleged in that complaint, "reasonable investors might have considered defendants' alleged illegal conduct to be important information they would want to have before they made their investment decisions," <u>id.</u> at 25, neither <u>Roeder</u> nor any other authority cited by Plaintiffs established a <u>per se</u> rule of materiality for allegations of bribery. <u>See id.</u>, at 28.

[14]  As demonstrated in Defendants' opening brief, the absence of any materiality of the legally stale alleged bribery scheme negates, <u>ipso facto</u>, any possible claim that Defendants <u>knew</u> they had a duty to disclose these alleged payments and consciously or recklessly failed to do so. (<u>See</u> Def. Mem. at 23-24 (citing cases).) Plaintiffs' inability to plead scienter is further underscored by the Second Circuit's decision from a little over a month ago in <u>Teamsters Local 445 v. Dynex Capital, Inc.</u>, No. 06-2902-cv, 2008 U.S. App. LEXIS 13449 (2d Cir. June 26, 2008), in which the Court rejected the "collective scienter" theory under which plaintiffs could attempt to establish scienter through "group pleading" allegations. <u>Id.</u> at *16-17. The SAC also fails to satisfy the <u>Dynex</u> individual scienter requirement by failing to allege that any specific defendant had knowledge of the alleged bribery scheme.

14

be false and misleading, the specific reasons why that particular statement was allegedly false and misleading." (Pl. Mem. at 10-11 (emphasis in original).) Even the most cursory reading of In re Alcatel Securities Litigation, 382 F. Supp 2d 513 (S.D.N.Y. 2005), upon which Judge Karas explicitly relied in dismissing the CAC (Dismissal Order at 23-24), demolishes Plaintiffs' argument. Indeed, the pleading held to be legally defective in Alcatel did precisely what Plaintiffs have now done here – i.e., it simply took the same laundry list of conclusory reasons why the challenged statements were fraudulent and pasted it after each alleged misstatement. Alcatel, 382 F. Supp. 2d at 534. (See also Def. Mem. at 26-28 (citing cases).)

Accordingly, Judge Karas' reliance on Alcatel in dismissing the CAC forecloses Plaintiffs' argument that they cured their pleading defects merely by pasting the same paragraph after each alleged misstatement,[15] and the SAC should be dismissed for the additional and independent reason that Plaintiffs have still failed to satisfy both Rule 9(b) and the PSLRA.[16]

## CONCLUSION

Accordingly, the SAC should be dismissed with prejudice.

Dated: New York, New York
       August 11, 2008

---

[15]  As demonstrated in Defendants' opening brief, Plaintiffs also added direct quotations from the Dismissal Order to their boilerplate paragraphs following each alleged misstatement. (See Def. Mem. at 27-29.) While Plaintiffs bizarrely argue that "Judge Karas did not rule on the sufficiency of his own Order," (Pl. Mem. at 12), they cannot seriously contend that parroting the Dismissal Order is tantamount to pleading more particularized factual allegations. See, e.g., Quach v. Cross, No. CV0309627GAFRZX, 2004 WL 2860346, at *3 (C.D. Cal. June 10, 2004) (dismissing amended complaint that "now parrots the language of this Court's order and of case law relied upon by it in granting Defendants' motion to dismiss the original complaint"), aff'd, 252 F. App'x 775 (9th Cir. 2007). Furthermore, adding generic language from the Dismissal Order does nothing to (i) provide fair notice of Plaintiffs' claims or (ii) protect Defendants from baseless lawsuits – two of the primary policies behind the heightened pleading standards contained in Rule 9(b) and the PSLRA. (See Def. Mem. at 28-29 (citing cases).)

[16]  Plaintiffs do not dispute that it would be inequitable and contrary to the PSLRA to allow Plaintiffs – who have already had three bites at the apple – to file yet another amended complaint, especially after Plaintiffs repeatedly turned down the opportunity to seek leave for further amendment before Defendants were forced to undertake the costly burden of moving to dismiss the SAC. (See Def. Mem. at 29-31.)

Respectfully submitted,

FEDER, KASZOVITZ, ISAACSON, WEBER,
  SKALA, BASS & RHINE LLP
Murray L. Skala (MS-9354)
Jonathan D. Honig (JH-7577)
750 Lexington Avenue
New York, New York 10022
Phone:  (212) 888-8200
Fax:  (212) 888-5968

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP

By:    <u>/s/ Jonathan J. Lerner</u>
        Jonathan J. Lerner (JL-7117)
        Michael H. Gruenglas (MG-8705)
        Maura B. Grinalds (MG-2836)
        Robert A. Fumerton (RF-3556)
        Four Times Square
        New York, New York  10036
        Phone:  (212) 735-3000
        Fax:  (212) 735-2000

Attorneys for Defendants

CERTIFICATE OF SERVICE

The undersigned, an attorney duly admitted to practice law before this Court,

hereby certifies under penalty of perjury, that on August 11, 2008, I caused a true copy of the

- ***Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Second Amended Consolidated Complaint***

to be served upon the following parties as indicated:

By Federal Express, overnight delivery:

Richard A. Maniskas, Esq.
Marc A. Topaz, Esq.
Schiffrin & Barroway, L.L.P.
Three Bala Plaza East
Bala Cynwyd, PA 19004

Gerald L Rutledge, Esq.
Alfred G. Yates, Esq.
519 Allegheny Building
429 Forbes Avenue
Pittsburgh, PA 15219

Dated:  New York, New York
       August 11, 2008

Steven Ray Katzenstein

1